# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                                          |     |                          |
|------------------------------------------|-----|--------------------------|
| MICHAEL DEFELICE                         | )   |                          |
|                                          | )   |                          |
| Plaintiff,                               | )   |                          |
|                                          | )   |                          |
| v.                                       | )   | C.A. No. N14C-09-084 VLM |
|                                          | )   |                          |
| BOBBY CUMMINGS, SHERI TULL,              | )   |                          |
| ELMER HARRIS, STEPHEN                    | )   |                          |
| MISETIC, HAROLD BOZEMAN,                 | )   |                          |
| VINCENT KNOLL, THE CITY OF               | )   |                          |
| WILMINGTON, DELAWARE, and                | )   |                          |
| CHARLES EMORY                            | )   |                          |
|                                          | )   |                          |
| Defendants.                              | )   |                          |

## MEMORANDUM OPINION AND ORDER

Submitted: July 29, 2016
Decided: August 16, 2016

*Upon Consideration of Defendants' Motion
for Summary Judgment,* **GRANTED.**

Daniel C. Herr, Esquire, Wilmington, Delaware, Attorney for the Plaintiff.

Rosamaria Tassone-DiNardo, Esquire, and Tara M. DiRocco, Esquire, City of Wilmington Law Department, Wilmington, Delaware, Attorneys for the Defendants.

**MEDINILLA, J.**

## INTRODUCTION

Plaintiff Michael DeFelice ("Plaintiff") alleges that certain officers of the Wilmington Police Department ("WPD"), as well as the City of Wilmington, Delaware, violated his rights under 42 U.S.C. § 1983, the Wilmington City Code and the Law Enforcement Officers' Bill of Rights in connection with Plaintiff's termination from the WPD in 2014. Defendants Bobby Cummings, Sheri Tull, Elmer Harris, Stephen Misetic, Harold Bozeman, Vincent Knoll, Charles Emory and the City of Wilmington, Delaware ("Defendants"), move for summary judgment as to all of Plaintiff's claims. Plaintiff concedes that Counts I, III, IV, V and VI of his Amended Complaint cannot be established; however, Plaintiff opposes summary judgment as to Amended Counts II, VII and VIII, which allege violations of 42 U.S.C. § 1983 and the Wilmington City Code § 40-256. After consideration of the parties' submissions and review of the oral arguments presented on July 29, 2016, for the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Michael DeFelice ("Plaintiff") was hired by the Wilmington Police Department ("WPD") in July 2005. After four years of what appears to be an exemplary work record, Plaintiff began experiencing conflicts at work. Beginning in 2010, Plaintiff's supervisors began to question his work practices and his

personal integrity. Plaintiff was, at all times relevant, a member of the Fraternal Order of Police ("FOP") Lodge #1 (*i.e.,* the police officers' union for the WPD). As a result, Plaintiff was subject to a Collective Bargaining Agreement ("CBA") with the City of Wilmington.[1]

On September 28, 2013, Plaintiff was transporting a prisoner to the Wilmington Hospital emergency room. While Plaintiff was attempting to secure him inside the room, the prisoner allegedly became unruly, requiring Plaintiff to handcuff the prisoner's hands behind his back. Plaintiff claimed that the prisoner continued to act in an unruly manner, threatened Plaintiff and Plaintiff's family, attempted to grab Plaintiff's taser and that in order to secure the prisoner, Plaintiff had to use physical force and the threat of a taser.

Pursuant to WPD Directives 6.7 and 7.9(B), Plaintiff was required to notify his supervising officer of the use of force and complete a report regarding the September 28, 2013 Incident (the "Incident").[2] After Plaintiff reported this use of force, Sergeant Vincent Knoll ("Knoll"), as Plaintiff's supervising officer, was required to complete a "Defensive Tactics Report" describing the circumstances and facts surrounding the Incident and his conclusions as a result of the

---

[1] *See generally* City of Wilmington & FOP Lodge #1 Bargaining Agreement 1–35, App. to Defs.' Opening Br. at A-394–A-431 [hereinafter App.].

[2] WPD "Use of Force/Departmental Weapons" Directive 6.7(V)(D)(1) at 5–6, App. at A-441–A-442; WPD "Use of Force" Directive 7.9(B)(1) at 1, App. at A-457.

preliminary investigation.[3] Pursuant to this Directive, Knoll conducted interviews at the hospital, read Plaintiff's report[4] and viewed the surveillance video.

Knoll found that Plaintiff's report and description of the Incident was contradicted by the surveillance video. The surveillance video showed Plaintiff using an unauthorized rear choke-hold but, contrary to Plaintiff's representations, did not show the prisoner grabbing Plaintiff's taser or Plaintiff using the authorized pressure points to gain control over him.

As a result of the inconsistencies discovered through his investigation of the Incident, Knoll believed Plaintiff to have violated WPD Directive 7.9(A)(2)[5] relating to use of force and WPD Directive 7.3(D)[6] relating to dishonesty. Knoll therefore recommended that the Office of Professional Standards ("OPS") further investigate the matter.[7] Knoll then submitted his Defensive Tactics Report up through his chain of command to OPS for review as required by WPD Directive 2.3.[8] Plaintiff claims that an initial draft of Knoll's report was modified due to

---

[3] WPD "Use of Force/Departmental Weapons" Directive 6.7(V)(D)(2) at 6, App. at A-442.

[4] Michael DeFelice's Sept. 28, 2013 Initial Crime Report, App. at A-485–A-490.

[5] WPD "Use of Force" Directive 7.9(A)(2) at 1, App. at A-457.

[6] WPD "General Prohibited Activity" Directive 7.3(D) at 2, App. at A-451 (requiring all members and employees "to be truthful and forthright at all times.").

[7] *See* Vincent Knoll's Oct. 12, 2013 Defensive Tactics Report, App. at A-386–A-390 (reporting conclusions of Knoll's investigation into the Incident and recommending OPS investigate the Incident).

[8] WPD "Office of Professional Standards" Directive 2.3, App. at A-432–A-436.

influences from higher up the chain of command.[9]

At the end of 2013 or beginning of 2014, Master Sergeant Charles Emory ("Emory"), an investigator with OPS, initiated the formal investigation of the Incident and the accusations against Plaintiff.[10] As part of the investigation, Emory interviewed Plaintiff. During the interview, Plaintiff offered an explanation regarding the discrepancies in his report, again maintaining that force was required because the prisoner was actively resisting.

Emory reported his findings and determined that Plaintiff had used excessive force against a handcuffed prisoner and was dishonest.[11] Emory recommended that Plaintiff be charged with violating Directive 7.3(D) (Dishonesty) and Directive 7.9(A)(2) (Use of Physical Force); he further recommended that the matter proceed to a Complaint Hearing Board ("CHB"), an administrative hearing.[12]

On May 23, 2014, Plaintiff emailed Emory, with a copy to Sergeant Harold Bozeman ("Bozeman"), FOP President, regarding the termination of Plaintiff's medical benefits if he was found guilty of dishonesty at the CHB hearing. Plaintiff expressed he felt "ambushed" physically and that if his health benefits were

---

[9] *See* Vincent Knoll's Oct. 12, 2013 Defensive Tactics Report, App. at A-381–A-385 (draft of Knoll's Defensive Tactics Report regarding his investigation of the Incident).

[10] *See* OPS's Jan. 14, 2014 "Notification of Complaint" to Michael DeFelice at 1, App. at A-491 (notifying Plaintiff of investigation into possible violation of Directive 7.3(D) relating to dishonesty).

[11] *See generally* Charles Emory's Apr. 7, 2014 OPS Supplement Report at 1–15, App. at A-339–A-353.

[12] *See id.* at 12–15, App. at A-350–A-353.

terminated, WPD would be effectively "slitting [his] wife and children's throats."[13] Concerned with the threatening tone of Plaintiff's email, an emergency meeting was held that afternoon between Chief Bobby Cummings ("Cummings"), OPS Captain Sheri Tull ("Tull") and Emory. As a result, Plaintiff was placed on administrative leave pending his CHB hearing.

That same day, Tull gave Plaintiff a memorandum advising him of the administrative leave pending the CHB hearing.[14] As part of this administrative leave, Plaintiff had to surrender his key card, could not carry on or off-duty weapons at any time, was not permitted access to WPD headquarters and could not work overtime.[15] Two sergeants escorted Plaintiff to the locker room and seized his work firearm as well as his personal firearm. Tull then sent a mass email to WPD employees informing them that Plaintiff was on administrative leave and banned from the building until his CHB hearing.[16]

At the CHB hearing on June 2, 2014, the hearing board was comprised of

---

[13] Michael DeFelice's May 23, 2014 Email to Charles Emory, App. at A-369.

[14] *See* Sheri Tull's May 23, 2014 Mem. to Michael DeFelice, App. at A-530.

[15] *Id.*

[16] Sheri Tull's May 23, 2014 "Officer Defelice" Email to WPD Employees, App. at A-331 (advising members of "WPD_All_Users" listserv that Plaintiff "has been placed on administrative leave as of today. Officer Defelice is not to have access in building until Tuesday, May 29, 2014 @ 0900 hours."). Another email containing the same information was sent to WPD employees when the CHB hearing was rescheduled. *See* Sheri Tull's May 28, 2014 "Officer Defelice – Update" Email to WPD Employees, App. at A-330 (advising members of "WPD_All_Users" listserv that Plaintiff's "CHB has been rescheduled for Monday, June 2, 2014 at 1000 hours. Officer Defelice will remain on administrative leave until such time. Officer Defelice is not to have access to or in the building.").

then-Captain Elmer Harris ("Harris"), Captain Faheem Akil and Captain Stephen Misetic ("Misetic");[17] Plaintiff was represented by counsel and pleaded not guilty. Plaintiff alleges that that Emory presented evidence at the CHB that he had gathered prior to Plaintiff being put on notice of the investigation and complaint against him and that the CHB relied on this evidence in making their determination to terminate Plaintiff. Plaintiff also claims Defendant Knoll failed to provide exculpatory evidence—a draft of the report prepared by Knoll concerning the Incident—that would have allowed him to present a better defense.

The CHB unanimously found Plaintiff guilty of excessive force and found Plaintiff guilty of dishonesty by a majority (Harris and Misetic); he was terminated from the WPD as a result of the dishonesty charge,[18] the only penalty permitted.[19] A third email was sent on June 3, 2014, informing WPD employees that Plaintiff was terminated and not permitted in the building except for his Appeal hearing.[20]

---

[17] This composition of a Complaint Hearing Board is contemplated pursuant to § 13.5 of the CBA and WPD "Complaint Hearing Board" Directive 8.7. *See* City of Wilmington & FOP Lodge #1 Bargaining Agreement § 13.5 at 15, App. at A-411 (disciplinary hearings shall be conducted by CHB, which must be comprised of Captains or Inspectors, excluding Inspector of Investigative Operations and Captain of OPS); WPD "Complaint Hearing Board" Directive 8.7 at 1, App. at A-461 (CHB must be comprised of officers holding rank of Captain or above, excluding Chief of Police, Inspector of Staff Inspections, and Commanding Officer of OPS).

[18] *See* OPS's June 2, 2014 "CHB Findings and Results" at 1–2, App. at A-392–A-393.

[19] WPD "General Prohibited Activity" Directive 7.3(D) at 2, App. at A-451 (mandating dismissal as the only penalty applicable to findings of dishonesty).

[20] Sheri Tull's June 3, 2014 "Officer Defelice" Email to WPD Employees, App. at A-329 (advising members of "WPD_All_Users" listserv that Plaintiff "was terminated from the Wilmington Police Department. Until such time as his appeal hearing is scheduled, Officer Defelice is still not allowed access to or in the building." (emphasis removed)).

On June 6, 2014, Plaintiff appealed the CHB determinations and challenged the roles of certain Defendants as to their impartiality.[21] On July 24, 2014, the WPD Appeal Board, consisting of Cummings, Bozeman and the Director of HR, Charlotte Barnes,[22] unanimously upheld Plaintiff's termination.[23] Although Plaintiff's then-counsel raised the CHB's alleged lack of neutrality and attacked Knoll's motivations, he opined that the Appeal board had been "eminently fair" and "impeccable" in its review of the matter.[24]

Plaintiff filed the instant action on September 10, 2014, against Bobby Cummings, Sheri Tull, Elmer Harris, Marlyn Dietz, Stephen Misetic, Martin Donohue, Harold Bozeman, Vincent Knoll, and Charles Emory. Plaintiff asserted claims pursuant to 42 U.S.C. § 1983, 11 *Del. C.* § 9200 (the Law Enforcement Officers' Bill of Rights, or "LEOBOR") and the Wilmington City Code § 40-256. On December 1, 2014, Defendants filed a Motion to Dismiss the Complaint, which this Court denied on March 13, 2015. On April 6, 2016, Plaintiff filed an Amended Complaint. The parties have since completed discovery.

---

[21] Daniel Griffith, Esq.'s June 6, 2014 Letter Notification of Written Appeal on Behalf of Michael DeFelice at 1–3, Ex. C to Pl.'s Answering Br.

[22] This composition of an Appeal Board is required pursuant to § 13.10 of the CBA and WPD "Appeal Board" Directive 8.8. *See* City of Wilmington & FOP Lodge #1 Bargaining Agreement § 13.10 at 16, App. at A-412 (Appeal Board must be comprised of the Chief of Police, the Human Resources Director and the FOP President, or their designees); WPD "Appeal Board" Directive 8.8 at 1, App. at A-466 (Appeal Board must be comprised of Chief of Police, Personnel Director of the City of Wilmington and an FOP Lodge #1 member not directly connected with prior CHB, or their designees).

[23] *See* WPD's July 24, 2014 "Appeal Board Hearing Findings" at 1–3, App. at A-377–A-379.

[24] Daniel Griffith, Esq., Appeal Hearing Tr. at 38:21–23, App. at A-113.

Defendants moved for summary judgment and filed their Opening Brief on June 17, 2016. Plaintiff submitted his Answering Brief on July 8, 2016, conceding the inability to establish some of his claims while opposing others. On July 15, 2016, Defendants submitted their Reply Brief. The Court heard oral arguments on July 29, 2016.

Plaintiff concedes his Stigma-Plus Liberty Interest claim (Amended Count I), his LEOBOR claims (Amended Counts III, IV and V) and his Deprivation of Handgun claim (Amended Count VI) cannot be sustained. However, Plaintiff maintains that Amended Counts II, VII and VIII have been sufficiently established so as to survive summary judgment. This Court therefore focuses solely on these three remaining claims.

Defendants first argue that Plaintiff's claim alleging a violation of the Wilmington City Code § 40-256 (Amended Count VII) fails as a matter of law because the Code does not provide a private cause of action available to Plaintiff since he is a party to the CBA. Alternatively, Defendants argue that even if § 40-256 did create a private cause of action, Plaintiff's claim against the City of Wilmington and individual Defendants is barred by the County and Municipal Tort Claims Act under 10 *Del. C.* §§ 4010–4013.

Secondly, as to Plaintiff's § 1983 claims alleging violations of his Fourteenth Amendment right to procedural due process, Defendants argue that

9

these claims fail as a matter of law because Defendants are entitled to qualified immunity on Amended Counts II and VIII and Plaintiff cannot establish a constitutional violation of his procedural due process rights. Specifically, as to Amended Count II, Defendants argue that Plaintiff's claim fails as a matter of law because the record evidence does not rebut the strong presumption of impartiality afforded to hearing officers. Specific to Amended Count VIII, Defendants argue that Plaintiff's "failure to disclose exculpatory evidence" claim fails as a matter of law because his reliance on the initial draft of Knoll's report as it relates to his due process argument is misplaced, since the record shows that Knoll did not have the authority to determine whether Plaintiff would be charged with a violation of dishonesty, a decision that is left to OPS. Defendants argue alternatively that, even if Knoll's unapproved and incomplete draft of the report should have been included under his LEOBOR rights, a violation of LEOBOR does not amount to a constitutional violation of due process and that Plaintiff has not demonstrated Knoll had any obligation to provide Plaintiff with said draft.

Having considered the parties' respective briefing and oral arguments, this is the Court's ruling on Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Superior Court Civil Rule 56 mandates the granting of summary judgment upon a showing by the movant that "there is no genuine issues as to any material

10

fact and that the moving party is entitled to judgment as a matter of law." [25] "Once the movant meets its burden, then the burden shifts to the non-movant to demonstrate sufficiently an existence of one or more genuine issues of material fact." [26] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances." [27] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party." [28] However, courts should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible." [29]

## ANALYSIS

### A. Wilmington City Code § 40-256 Claim (Amended Count VII)

#### 1. Section 40-256 Does Not Create a Private Right of Action Available to Plaintiff

Plaintiff is a member of the Fraternal Order of Police (the "FOP"), which

---

[25] Super. Ct. Civ. R. 56(c).

[26] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488 (Del. 1995). *See also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979); Super. Ct. Civ. R. 56(e).

[27] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[28] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986).

[29] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986) *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

holds a Collective Bargaining Agreement ("CBA") with the City of Wilmington.[30]

Consequently, before discussing whether § 40-256 of the Wilmington City Code

(the "Code") creates a private cause of action, this Court first looks at the effect

of collective bargaining agreements under § 40-10:

> (a) To the extent the provisions of this chapter conflict with the terms of any applicable collective bargaining agreement between the city and its employees, the terms of the collective bargaining agreement shall govern.
> (b) If a collective bargaining agreement is silent in regard to matters addressed in this chapter, the terms of this chapter shall apply.[31]

According to § 40-10, the Code only applies to City of Wilmington

employees if there is no CBA or if the CBA is silent as to the matters discussed in

Chapter 40 of the Code. If a CBA exists and is in conflict with provisions of the

Code, the CBA governs. Regardless, Plaintiff contends he can still pursue a

private cause of action under § 40-256 of the Code.

Section 40-256 of the Code states: "Disciplinary measures may be taken

for any good and sufficient cause. The extent of the disciplinary action taken

shall be commensurate with the offense, provided that the prior employment

history of the employee may also be considered."[32] The Code does not expressly

create a private cause of action. Where a statute does not expressly create a

---

[30] *See generally* City of Wilmington & FOP Lodge #1 Bargaining Agreement 1–35, App. A-394–A-431.

[31] *Wilm. C.* ch. 40, § 40-10 (2004).

[32] *Wilm. C.* ch. 40, § 40-256 (2004).

private remedy, Delaware has adopted the United States Supreme Court's test from *Cort v. Ash*[33] to determine if a private cause of action under an otherwise silent statute exists. The *Cort* test asks:

> (1) Is the plaintiff a member of the class for whose special benefit the statute was enacted? (2) Is there any indication of a legislative intent, express or implied, to create a private remedy or deny one? (3) Is it consistent with the underlying purpose of the legislative plan to imply a private remedy?[34]

This Court finds that Plaintiff cannot satisfy the first factor of the *Cort* test; Plaintiff is not a member of the class for whom the Code was enacted, because he is a member of FOP and is therefore subject to the provisions of the CBA. Section 40-256 is not applicable to the claims in Plaintiff's Amended Complaint because Article 13 of the CBA explicitly addresses WPD disciplinary proceedings[35]—including officer discipline—and Article 4 provides a grievance procedure,[36] the same matters addressed by Chapter 40 of the Code. Because the CBA is *not* silent with regard to the matters covered by Chapter 40 of the Code, the terms of Chapter 40 of the Code—including § 40-256—are inapplicable to the instant

---

[33] 422 U.S. 66 (1975).

[34] *Miller v. Spicer*, 602 A.2d 65, 67 (Del. 1991). *See also Torres v. Sussex Cty. Council*, 2014 WL 7149179, at *3 (Del. Super. Dec. 8, 2014).

[35] *See* City of Wilmington & FOP Lodge #1 Bargaining Agreement §§ 13.2–13.13 at 14–18, App. at A-410–A-414 (describing "work rules and regulations," including CHB and Appeal procedures).

[36] *See id.* §§ 4.1–4.13 at 3–4, App. at A-399–A-400 (describing "grievance procedure" for WPD employees to seek review of issues relating to unfair or improper aspects of employment including alleged violations of the CBA).

matter. Plaintiff has no cause of action under § 40-256.

Furthermore, the other *Cort* factors are not satisfied as there is no indication of a legislative intent to create a private cause of action and implying one would be inconsistent with the underlying purpose of the legislative plan. Analyzing § 40-256 in light of the other provisions of Chapter 40, Article II, Division 5 of the Code,[37] it is clear that the Code is more of an internal guideline governing the disciplinary and grievance proceedings pertaining to the City's non-union workforce and unionized workers whose CBAs are silent with regard to matters covered in Chapter 40 of the Code.[38]

Because Plaintiff fails to satisfy the *Cort* test and the CBA otherwise governs WPD disciplinary proceedings, Plaintiff is unable to establish that there exists a genuine issue of material fact and summary judgment as to Amended Count VII is **GRANTED** as a matter of law in favor of all Defendants.

### 2. Defendants Are Immune under the County and Municipal Tort Claims Act (10 Del. C. §§ 4010–4013)

Even if § 40-256 provided a private cause of action not governed by the

---

[37] *See Wilm. C.* ch. 40, § 40-257 ("[Disciplinary action]—Kinds of action; definitions."); § 40-258 ("Same—Effective date."); § 40-259 ("Same—Authority; due process."); § 40-260 ("Same—Notice to employees."); § 40-271 ("Grievances and appeal—Scope and limitations."); § 40-272 ("Grievance and appeal procedures."); § 40-273 ("Personnel appeal board."); § 40-274 ("Personnel—Disciplinary appeal procedures.").

[38] *See generally Torres*, 2014 WL 7149179, at *4 (granting motion to dismiss because Sussex County Personnel Ordinance "does not create a private cause of action. The Ordinance merely establishes the procedures for removal [of an employee]; it does not create the tort of wrongful termination. ... [I]f anything, [the Ordinance] is more akin to an internal guideline, which does not have the force of law, than a statutory prohibition." (footnotes omitted)).

14

CBA, Plaintiff's claim in Amended Count VII is otherwise barred by the County and Municipal Tort Claims Act (the "Act").

The Act provides: "Except as otherwise expressly provided by statute," government entities and their employees are immune from suit "on any and all tort claims seeking recovery of damages."[39] However, an employee may otherwise be personally liable for acts or omissions causing "property damage, bodily injury or death" if the acts were not within the scope of employment or if they were performed with wanton negligence or willful and malicious intent.[40]

Plaintiff has not sufficiently demonstrated why or how § 40-256 "operates as a self-imposed exception" to the Act,[41] particularly where § 4011(a) states "[e]xcept as otherwise *expressly* provided by statute."[42] It certainly cannot be said that § 40-256 "expressly" provides an exception to this immunity. Moreover, Plaintiff fails to explain how his claim falls within one of the limited recognized exceptions to immunity under § 4012 of the Act—Plaintiff has not alleged that Defendants caused him property damage (which must be more than economic damages for loss of income[43]), bodily injury or death,[44] let alone one of the three

---

[39] 10 *Del. C.* §4011(a).

[40] 10 *Del. C.* §4011(c).

[41] Pl.'s Answering Br. at 20.

[42] 10 *Del. C.* § 4011(a) (emphasis added).

[43] *See Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. 1997) (adopting the holding of *Carr v. Town*

15

recognized exceptions to immunity under § 4012(1)–(3).[45]

For these additional reasons, summary judgment in favor of all Defendants is also appropriate where the County and Municipal Tort Claims Act bars Plaintiff's § 40-256 claim.

## B. Section 1983 Procedural Due Process Claims (Amended Counts II and VIII)

### 1. Qualified Immunity

Defendants invoke the doctrine of qualified immunity that protects government officials and employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46]

To determine whether qualified immunity applies, this Court evaluates (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at

---

*of Dewey Beach*, 730 F. Supp. 591, 602 (D. Del. 1990), that "economic harm alone does not constitute 'property damage' as that term is used in the Act."); *Poulos v. City of New Castle*, 2014 WL 7205169, at *7 (D. Del. Dec. 15, 2014) ("The complaint seeks damages for garden variety emotional distress, humiliation, embarrassment, and injury to reputation. Harm to reputation constitutes economic loss, not injury to person or property."); *Jackson v. Stallings*, 2014 WL 1677647, at *3 (Del. Super. Apr. 17, 2014) ("At most, Plaintiff claims financial loss… however, financial loss cannot constitute property damage."), *aff'd sub nom. Jackson v. Dizdar*, 2015 WL 1049555 (Del. Mar. 11, 2015).

[44] 10 *Del. C.* § 4012.

[45] 10 *Del. C.* § 4012(1)–(3) (providing exceptions to immunity for negligent ministerial acts). *See also Davis v. Town of Georgetown*, 2001 WL 985098 (Del. Super. Aug. 22, 2001) (granting motion for summary judgment and holding that municipalities and their employees are immune from suit for claims alleging wrongful discharge), *aff'd*, 806 A.2d 164 (Del. 2002).

[46] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

the time of defendant's alleged misconduct.[47] In determining whether a right was clearly established, the relevant "inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession."[48]

Defendants' argument is three-fold: 1) Plaintiff has not suffered a violation of a constitutional right and Defendants are entitled to qualified immunity; 2) even if Plaintiff suffered a violation of his constitutional rights, a reasonable officer could have believed Defendants' conduct was lawful given the circumstances presented in this matter; and 3) even if this Court finds Defendants erred in what the law required, Defendants' mistake was reasonable. As such, Defendants are entitled to qualified immunity and Plaintiff's claims must be dismissed.

For the reasons discussed below, this Court finds that Plaintiff fails to establish a violation of his procedural due process rights by Defendants Cummings, Tull, Misetic, Harris, Bozeman and Knoll. Therefore, this Court need not address whether the violation, if one had occurred, was of a "clearly established" right.[49] Defendants are entitled to qualified immunity and Plaintiff's § 1983 claims are barred and otherwise fail as a matter of law.

---

[47] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (receding from *Saucier v. Katz*, 533 U.S. 194 (2001) and instructing that courts can begin evaluation with either prong).

[48] *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

[49] *Pearson*, 555 U.S. at 232.

17

## 2. Plaintiff Fails to Establish A Violation of Procedural Due Process Based on His "Impartial Decision-Makers" Claim (Amended Count II)

It is well established that a "fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of actual bias."[50] This requirement applies to courts as well as administrative agencies that adjudicate.[51] Among those situations where the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable are cases in which "the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him."[52] Another instance arises where a judge acts "as a grand jury and then tr[ies] the very persons accused as a result of his investigations."[53] This is not the case here.

Instead, where, as here, a party contends "the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication," that party has a "much more difficult burden of

---

[50] *In re Murchison*, 349 U.S. 133, 136 (1955).

[51] *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' … This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." (footnote and citations omitted)).

[52] *Withrow*, 421 U.S. at 47 (footnote omitted). *See also Tumey v. Ohio*, 273 U.S. 510 (1927) (finding procedural due process violation where defendant was convicted of criminal offense, fined and committed to jail by judge who had direct, personal, substantial, pecuniary interest in reaching decision to convict).

[53] *In re Murchison*, 349 U.S. at 137.

persuasion to carry."[54]   As the United States Supreme Court explained in *Withrow*

*v. Larkin*,

> [Plaintiff's contentions] must overcome a presumption of
> honesty and integrity in those serving as adjudicators;
> and it must convince that, under a realistic appraisal of
> psychological   tendencies   and   human   weakness,
> conferring investigative and adjudicative powers on the
> same individuals poses such a risk of actual bias or
> prejudgment that the practice must be forbidden if the
> guarantee of due process is to be adequately
> implemented.[55]

As courts have since observed, "there is strong presumption of impartiality

which is not lightly rebutted, and only in 'the most extreme of cases' will it be

overcome."[56]  "Personal bias or prejudice 'alone would not be sufficient basis for

imposing a constitutional requirement [of disqualification] under the Due Process

Clause.'"[57]    The disqualifying criteria "cannot be defined with precision.

Circumstances and relationships must be considered."[58]  Based on this record, the

Plaintiff does not overcome the strong presumption of impartiality afforded to

Defendants Misetic, Harris, Cummings, Bozeman and Tull with regard to their

---

[54] *Withrow*, 421 U.S. at 47.

[55] *Id.*

[56] *Walls v. City of Milford*, 938 F. Supp. 1218, 1224 (D. Del. 1996) (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986)). *See also Coles v. Delaware River & Bay Auth.*, 2010 WL 335612, at *4 (D. Del. Jan. 29, 2010) ("[W]hile the plaintiffs are entitled to unbiased and impartial hearing officers, courts have consistently held that a board is not per se biased simply because it performs the twin functions of investigation and adjudication." (citation omitted)).

[57] *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009) (quoting *Lavoie*, 475 U.S. at 820).

[58] *In re Murchison*, 349 U.S. at 136.

respective roles and/or connections to the CHB and Appeal hearings.[59]

The facts of this case are similar to those present in *Izquierdo v. Sills*, where the plaintiff-officer was similarly placed on administrative leave, prohibited from carrying weapons on or off duty and prohibited from working extra duty or overtime assignments during the course of an investigation regarding his dishonesty and excessive use of force.[60] Also similar to the instant matter, the plaintiff in *Izquierdo* alleged that he was deprived of procedural due process based on the partiality of the administrative board that adjudicated the charges against him and after finding him guilty, terminated him.[61]

The court granted summary judgment, holding that the plaintiff could not establish a violation of due process based on the allegation that the defendant, Inspector of the WPD, had "tainted" the Chief by informing him of the progress of the investigation.[62] The court held:

> Informing the Chief is not itself a direct constitutional injury. Indeed, a strong argument can be made that a police Chief should be informed of alleged errant conduct by officers under his command. Further, having information about the case does not in itself create any

---

[59] Defendants Misetic and Harris adjudicated the CHB hearing and found Plaintiff guilty of dishonesty. Defendants Cummings and Bozeman adjudicated the Appeal hearing and upheld the determinations of the CHB. Defendant Tull is accused of tainting both proceedings by sending the emails regarding Plaintiff's administrative leave and that he was banned from headquarters.

[60] 68 F. Supp. 2d 392, 400, 420 (D. Del. 1999).

[61] *Id.* at 404, 416.

[62] *Id.* at 419.

risk of a constitutional violation.[63]

Applying *Izquierdo* to the facts of the instant matter, Plaintiff fails to establish that a genuine issue of material fact exists as to whether Defendants violated Plaintiff's procedural due process rights. The fact that Plaintiff was placed on administrative duty, with all the ancillary conditions that accompany it, pending the CHB does not evidence actual bias. That Cummings and Bozeman, as Captain and FOP President, were apprised of the investigation into the Incident also does not establish they were actually biased in deciding Plaintiff's appeal.

Plaintiff argues that actual bias can be inferred or implied primarily in the context of rumors and gossip. However, simply because members of an administrative board may be "cognizant of rumors unfavorable to the plaintiff" does not mean they "reached an adverse decision without considering the record."[64] That Defendants were informed Plaintiff was banned from the building and some may have been aware of concerns with Plaintiff does not establish they were actually biased their adjudication of the charges against Plaintiff.

Plaintiff further alleges Defendants Misetic and Harris were biased during Plaintiff's CHB hearing based on their respective involvement in prior investigations in 2012 into Plaintiff's possible dishonesty regarding his military history. He argues that Misetic's and Harris' bias can be established by showing

---

[63] *Id.* at 412.

[64] *Hopkins v. Mayor & Council of City of Wilmington*, 600 F. Supp. 542, 550 (D. Del. 1984).

how they asked questions of witnesses at the CHB hearing. Plaintiff interpreted the tone of the questions to be "actively recuperating witnesses for [the] prosecution" and believed Misetic and Harris acted like prosecutors themselves.[65] Plaintiff may have perceived some of the questioning as prosecutorial in tone, yet acknowledges that board members are permitted to ask questions during these kinds of hearings.[66]

Furthermore, the fact that Defendants had prior dealings with Plaintiff, either related to the Incident or past investigations and/or adjudications pertaining to Plaintiff's conduct, is insufficient to demonstrate actual bias.[67] None of these Defendants—Misetic, Harris, Cummings, Bozeman and Tull—performed the "twin functions of investigation and adjudication" with regard to the Incident.[68] In this case, Knoll, who performed the preliminary investigation, and Emory, who performed the formal investigation, did not sit on the hearing boards.

Plaintiff attempts unsuccessfully to analogize the circumstances of *In re Murchison*[69] to his instant matter. The circumstances and relationships presented

---

[65] Michael DeFelice's Mar. 2, 2016 Dep. at 71:16–18, 71:22–72:5, App. at A-201.

[66] *Id.* at 72:17–23, App. at A-201.

[67] *See Withrow*, 421 U.S. at 47. *See also Town of Cheswold v. Vann*, 947 A.2d 1123, 2007 WL 1201716, at *2–*3 (Del. Apr. 23, 2007) (TABLE) (finding town council members who sat on former police chief's hearing were not biased simply because they had also investigated chief's alleged wrongdoing).

[68] *Coles*, 2010 WL 335612, at *4.

[69] 349 U.S. 133.

in that case are much different than the case here.[70]  Applying the holding of that case to the facts of the instant matter, it is clear that Emory, as the OPS investigator who determined to bring charges against Plaintiff, would have been precluded from adjudicating Plaintiff's disciplinary hearings.  However, Emory did not sit on either of these Boards, but rather performed the formal investigation and presented the case against Plaintiff at the hearings; Knoll, who provided the first recommendation that OPS further investigate the Incident, likewise did not sit on either of these hearing boards.  Finally, Plaintiff could have sought the disqualification of Harris and Misetic prior to the CHB hearing pursuant to Section 13.5(c) of the CBA if he had concerns of their alleged knowledge of his prior history.[71]  Plaintiff opted not to do so.  He similarly could have sought the disqualification of Bozeman from his Appeal Hearing based on his "prior confidential communications" with Plaintiff, his belief that Plaintiff was a threat because of his email to Emory or his unfulfilled recusal from Plaintiff's Appeal Board hearing; yet he did so only after Bozeman voted to uphold his termination.[72]

At all relevant times Plaintiff was represented by counsel, who created a

---

[70] In *In re Murchison*, criminal contempt proceedings arose out of witnesses' conduct before a Michigan grand jury; the judge who sat as the Michigan "judge-grand jury," before which the witnesses had testified, also presided over the contempt hearing wherein the witnesses were found in contempt for their conduct before the "one-man grand jury" (*i.e.,* the judge-grand jury). *Id.* at 134–36.  The United States Supreme Court held that it was a violation of due processes for the "judge-grand jury" to charge and then try those witness-defendants. *Id.* at 139.

[71] City of Wilmington & FOP Lodge #1 Bargaining Agreement § 13.5(c) at 15, App. at A-411.

[72] Michael DeFelice's Mar. 2, 2016 Dep. at 92:1–95:12, App. at A-206–A-207.

record at the CHB hearing.[73] Plaintiff exercised his right to appeal the CHB ruling. Plaintiff raised those same concerns at the subsequent Appeal Board hearing. The Appeal Board determined that Plaintiff's argument was without merit and upheld the CHB decision terminating Plaintiff. Plaintiff's then-counsel again created a record regarding the impartiality and fairness of the Appeal hearing, as "[i]mpeccable. Impeccable. Thank you very much. I think this was eminently fair."[74]

Under these circumstances, this Court finds that Plaintiff has failed to establish a violation of his procedural due process right to impartial hearing boards.[75] The CHB reviewed the record before them, including Plaintiff's report, and reviewed the surveillance video of the Incident before finding against Plaintiff on the charges of excessive force and dishonesty. Defendants have met their burden of demonstrating that there are no genuine issues of material fact remaining as to Count II of Plaintiff's Amended Complaint, and Plaintiff does not sufficiently rebut Defendants' showing. Accordingly, summary judgment as to Amended Count II is **GRANTED** as a matter of law in favor of all Defendants.

---

[73] Daniel Griffith, Esq., CHB Hearing Tr. at 288:19–289:14, App. at A-72–A-73.

[74] Daniel Griffith, Esq., Appeal Hearing Tr. at 38:21–23, App. at A-113.

[75] This Court need not address Defendants' argument regarding whether Plaintiff has waived his "bias argument" as a matter of law.

### 3. *Plaintiff Fails to Establish a Deprivation of Procedural Due Process Based on Knolls' "Failure to Disclose Exculpatory Evidence" (Amended Count VIII)*

Lastly, Plaintiff asserts that he was deprived of his procedural due process rights by Knoll's failure to disclose the initial draft of his Defensive Tactics Report prior to the CHB and Appeal hearings. This Court disagrees.

Pursuant to WPD Directive 6.7, Plaintiff was required to report any use of force to his supervising officer.[76] Knoll, as his supervising officer, was required to complete a Defense Tactics Report detailing the circumstances and facts surrounding the Incident and his conclusions as a result of the preliminary investigation. However, Knoll did not have the authority to determine whether Plaintiff would actually be charged with a violation of WPD directives or polices. Rather, Knoll simply conducted the preliminary investigation required of an immediate supervising officer and then sent his report up the chain of command; it was Emory who formally initiated the investigation into the Incident and presented evidence against Plaintiff at the CHB and Appeal hearings.

Plaintiff fails to establish how Knoll had an obligation to provide him with a draft of his report. Even if it could be established that Plaintiff had some right to a draft, Directive 8.4 does not require OPS to notify an accused officer prior to *any* investigative actions being taken, because preliminary investigations may ferret out

---

[76] WPD "Use of Force/Departmental Weapons" Directive 6.7, App. at A-437–A-449.

meritless accusations obviating any need to speak to the accused officer.[77] Although Knoll made a recommendation, and was clearly under a duty to pass it up the chain of command, there is no evidence to suggest that Knoll also had an obligation to present his findings and recommendations to Plaintiff at any time, let alone an unfinished draft version of his report.

Finally, Plaintiff fails to set out in any meaningful way how this version of Knoll's report was *exculpatory*, as is his claim. If anything, the draft could speak to Knoll's credibility if he changed his determination as to the finding of dishonesty, but Plaintiff has not explained how access to this draft would have changed the outcome in this case. Wholly aside from the recommendations of Knoll, the OPS investigation was *formally* initiated by Emory, who conducted his own investigation and was not bound to follow Knoll's recommendations.[78] The CHB undertook a review of the record and the surveillance video prior to making its determination, which was affirmed by the Appeal Board. Defendants were able to draw their own conclusions as to whether Plaintiff had been dishonest in his reporting of the Incident and his use of excessive force.

---

[77] Elmer Harris' Dec. 2, 2015 Dep. at 49:22–51:3, App. at A-240–A-241.

[78] Notably, Plaintiff was investigated in 2012 for possible dishonesty in connection with military deployment history. That matter was initially investigated by Master Sergeant Steven Barnes, who recommended that Plaintiff be charged with dishonesty; Barnes' report was sent to OPS. Sergeant Reutter of OPS then began a formal investigation as to whether charges should be brought against Plaintiff. Interestingly, OPS's investigation in 2012 found those complaints against Plaintiff to be unsubstantiated. Reutter's May 10, 2012 OPS Investigative Report, App. at A-472–A-477. Harris, who was the Captain of OPS at that time, signed off on that recommendation. *Id.* at A-477.

Based on the record before it, this Court finds Defendant Knoll has met his burden of demonstrating that there are no genuine issues of material fact remaining as to Count VIII of Plaintiff's Amended Complaint, and Plaintiff does not sufficiently rebut Defendant's showing. Accordingly, summary judgment as to Amended Count VIII is **GRANTED** in favor of sole Defendant Knoll.

## CONCLUSION

Defendants have satisfied their burden under Rule 56. This Court therefore finds as to Amended Counts I, II, IV, V and VII, summary judgment is **GRANTED** in favor of all Defendants; as to Amended Count III, summary judgment is **GRANTED** in favor of sole Defendant Tull; as to Amended Count VI, summary judgment is **GRANTED** in favor of sole Defendant Cummings; and as to Amended Count VIII, summary judgment is **GRANTED** in favor of sole Defendant Knoll.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:     Prothonotary

27