**Rod MILLER, Plaintiff Below, Appellant,**

v.

**Robert SPICER, M.D. and Beebe Medical Center, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Nov. 26, 1991.

Decided: Dec. 30, 1991.

Barbara J. Gadbois (argued), Ament, Lynch & Carr, Wilmington, for appellant Rod Miller.

Richard F. Stokes, Tunnell & Raysor, Georgetown, and Sidney R. Steinberg (argued), and A. James Johnston, Post & Schell, P.C., Philadelphia, Pa., for appellee Beebe Medical Center.

John A. Elzufon, Elzufon, Austin & Drexler, P.A., Wilmington, for appellee Robert Spicer, M.D.

Before CHRISTIE, C.J., HORSEY, and WALSH, JJ.

WALSH, Justice:

■ Pursuant to the authority conferred

by the Delaware Constitution,[1] this Court has accepted certification of two questions of law propounded by the United States District Court for the District of Delaware. The questions accepted are as follows:

(1) Are the administrative remedies provided by the Delaware Equal Accommodations Law, (6 *Del. C.* § 4501 *et seq.*) the exclusive remedies for a claim under that law?

(2) If question (1) is answered in the negative, must a claimant nevertheless exhaust the extant administrative remedies before asserting a claim under the Delaware Equal Accommodations Law?

For the reasons hereafter expressed, we answer question (1) in the affirmative thus rendering unnecessary an answer to question (2).

## I

The parties have filed a stipulation embracing the following statement of facts:

1. On June 28, 1987, while in Sussex County, Delaware, Plaintiff Rod Miller suffered a laceration to his left foot.

2. Plaintiff was treated in the emergency room of Defendant Beebe Medical Center on June 28, 1987.

3. Plaintiff was examined by Dr. Emery and Defendant Spicer in the emergency room.

4. Plaintiff was advised by Dr. Spicer that he would not perform surgery on plaintiff's foot and that plaintiff would be transferred to George Washington University Medical Center in Washington, D.C. for further treatment.

5. On June 28, 1987, plaintiff was transported by helicopter from Beebe Medical Center to Georgetown University Hospital in Washington, D.C.

6. At all times relevant to this cause of action the Equal Accommodations Law enacted at 6 *Del. C.* Section 4501 *et seq.* was in effect.

7. Neither plaintiff nor anyone on his behalf filed a Complaint with the Chairman of the Commission as provided for in 6 *Del. C.* Section 4506.

Miller filed a complaint in the United States District Court seeking recovery of damages on various grounds including negligence, breach of contract, as well as federal discrimination and civil rights violations. In Count VI of his complaint, Miller alleged that defendants, Robert Spicer, M.D. and Beebe Medical Center ("Defendants"), discriminated against him and denied him medical treatment "solely by reason of his alleged handicap in violation of the laws of the State of Delaware."[2] Defendants moved to dismiss Miller's State discrimination claim on the ground that Miller has failed to exhaust his administrative remedies under the Delaware Equal Accommodation Act (the "Act"). Miller countered that he is not limited to the Act's administrative remedies because the Act confers a private cause of action upon which he could proceed in either federal or state court.

The first question certified thus presents the legal issue of whether the Delaware Equal Accommodations Act was intended to create a private cause of action upon which an aggrieved individual could seek damages in a private civil action.

## II

The Delaware statute addressing the subject of equal public accommodation has for its stated purpose the prevention "in

---

1. Del. Const. art. IV, § 11 provides in pertinent part:

   Section 11. The Supreme Court shall have jurisdiction as follows:

   \* \* \* \* \* \*

   (9) To hear and determine questions of law certified to it by other Delaware courts and the United States District Court for the District of Delaware where it appears to the Supreme Court that there are important and urgent reasons for an immediate determina-

tion of such questions by it. The Supreme Court may by rules define generally the conditions under which questions may be certified to it and prescribe methods of certification.

2. The precise nature of Miller's handicap is not clear from the present record or stipulation of facts. For present purposes, the defendants do not dispute Miller's assertion that he was a handicapped person at the time he sought treatment at Beebe.

places of public accommodation practices of discrimination against any person because of race, age, marital status, creed, color, sex, handicap, or national origin." 6 *Del.C.* § 4502.[3] The refusal of access to any place of public accommodation, which includes any establishment offering "goods or services or facilities to, or solicit[ing] patronage from, the general public" is deemed an unlawful practice. 6 *Del.C.* §§ 4501(1), 4504. The Act places responsibility for securing compliance with its mandate upon the State Human Relations Commission ("Commission") which is authorized to investigate complaints and resolve grievances, where well founded, through conciliation and voluntary compliance. 6 *Del.C.* § 4506. In the absence of voluntary agreement the Chairman of the Commission is authorized to enter an order of compliance. 6 *Del.C.* § 4506(f). Any party aggrieved by an order of the Commission may seek review *de novo* in the Superior Court. 6 *Del.C.* § 4513. The Commission may certify violations for prosecution by the Attorney General who may also prosecute *sua sponte.* 6 *Del.C.* § 4514. Enforcement of Commission orders may also be sought through a civil action in the Court of Chancery. 6 *Del.C.* § 4516.

Miller argues that, in addition to the elaborate administrative and enforcement provisions set forth in the statute, a person aggrieved by a violation of the Act may pursue a private cause of action for damages. He points to the use of the word "may" in section 4506(a), which recites that an aggrieved person "may, by himself or his attorney-at-law file with the Chairman of the Commission a complaint in writing ...", as indicative of legislative intent that the administrative process is but one option available for redress of discrimination. Had the General Assembly intended the administrative remedy be the sole basis for vindication of discrimination claims, the argument runs, the word "shall" would have been employed. The administrative right is thus deemed a non-exclusive remedy.

The use of the verb "shall" in legislation generally connotes a mandatory requirement while the verb "may" is deemed permissive. *Delaware Citizens for Clean Air, Inc. v. Water and Air Resources Commission,* Del.Super., 303 A.2d 666, 667 (1973), *aff'd,* Del.Supr., 310 A.2d 128 (1973). But the test is a contextual one and the mere use of a term does not control the question of legislative intent if the full setting of the statute suggests a different construction. *Bartley v. Davis,* Del.Supr., 519 A.2d 662 (1986). In our view, the use of the term "may" in section 4506(a) is suggestive of no more than a legislative indication that a person aggrieved by alleged discrimination in public accommodations might have recourse to the administrative remedy established under the statute. Indeed, the use of the word "shall" would impart, inappropriately we think, the notion that aggrieved persons were forced to initiate the administrative process. In its present statutory setting, we attach little significance to the use of the term "may" in the absence of any express indication in the Act that the General Assembly sought to create a separate private remedy.

Nor can it be fairly asserted that evidence of intent to create a private remedy is discernable from the overall legislative scheme. In *Mann v. Oppenheimer & Co.,* Del.Supr., 517 A.2d 1056 (1986), this Court adopted the tri-partite test for determining the existence of a private remedy applied by the United States Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975): (1) Is the plaintiff a member of the class for whose special benefit the statute was enacted? (2) Is there any indication of a legislative intent, express or implied, to create a private remedy or deny one? (3) Is it consistent with the underlying purpose of the legislative plan to imply a private remedy?

It may be assumed that Miller is a member of the class intended to benefit from the Act since the defendants do not, for present purposes, contest his handicapped

---

3. As originally enacted, the statute did not extend protection to handicapped persons. An amendment to accomplish that end was added in 1987. 66 *Del.Laws,* c. 68.

status. With respect to the second consideration, the Act, as previously noted, contains no express provision creating, or excluding, a private remedy. The question of whether a private remedy was impliedly contemplated is subsumed within the third inquiry—whether the existence of a private remedy advances the underlying purpose of the legislative scheme. In our view the allowance of a private cause of action fails to advance the legislative purpose and, indeed, might serve to retard its announced purpose.

The Delaware Equal Accommodation Act, when viewed in its entirety, has for its purpose the elimination of discrimination through the conciliatory, and, where necessary, enforcement powers of an administrative agency—the Human Relations Commission. At the initial level of administrative activity the Commission panel, whether prompted by complaint or on its own initiative, is charged with the elimination of discrimination by "conference, persuasion and conciliation." 6 *Del.C.* § 4506(c). If that effort is unavailing the Commission Chairman is authorized to enter into an agreement with the respondents on such "terms as are reasonable" to "effectuate the purposes" of the Act. 6 *Del.C.* § 4506(f). Although it may seek enforcement of its order and recommend criminal prosecution, the primary thrust of the Commission's activities is one of conciliation and mediation to eliminate perceived discrimination. In requiring the filing of complaints within ninety days of the occurrence of the alleged act of unlawful discrimination, 6 *Del.C.* § 4506(b), the legislature clearly intended that the Commission act promptly to deal with discrimination claims and thus resolve claims while practical forms of redress are still available through conciliation.

In view of the Act's central theme of conciliation, the intrusion or the prospect of private litigation would have an obvious unsettling effect. Respondents would be reluctant to participate in conciliatory discussions in the face of threatened litigation. The presence of parallel litigation might deter parties from the free and open discussion without which conciliation and mediation cannot be successful. The effectiveness of criminal prosecution might also be compromised if parties were reluctant to testify because of the specter of subsequent private litigation. Finally, we note that the Act's provision for trial *de novo* on appeal to the Superior Court requires the aggrieved party to "designate himself as plaintiff and the Commission and any other parties ... as defendants." 6 *Del.C.* § 4513(b). We view this requirement as a clear indication that the stated judicial remedy was intended to be an extension of the administrative process, not an independent judicial proceeding. It is difficult to envision any rationale for permitting separate civil litigation for the purpose of securing further relief in the form of an award of damages.

The Act contains no express authorization for the maintenance of a private cause of action and, in our view, no legislative intention to permit such a remedy may be implied from the Act's underlying purpose. Accordingly, the Act's administrative remedies are the exclusive means for redressing discriminatory practices and the first question must be answered in the affirmative. It is, therefore, unnecessary to address the second certified question.