# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JAMES BROWN, MARGARET
EVANS, ROBERT CUNNINGHAM
JUAN GONZALEZ, ELBERT
MARTIN, AMEEN SHABAZZ,
BARRY YERGER, MICHAEL LEWIS,
and KEVIN MALLOY,

        Plaintiffs,

        v.

CITY OF WILMINGTON,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N16C-06-184 VLM

## MEMORANDUM OPINION

Submitted: December 18, 2018
Decided: January 8, 2019

*Upon Consideration of Plaintiffs' Motion for Summary Judgment,*
**DENIED.**

*Upon Consideration of Defendant's Motion for Summary Judgment,*
**GRANTED**, in part, and **DENIED**, in part.

Gary S. Nitsche, Esquire (argued), and Rachel D. Allen, Esquire of Weik, Nitsche & Dougherty, LLC, of Wilmington, Delaware. *Attorneys for Plaintiffs.*

Lauren A. Cirrinicione, Esquire (argued), and Kelley M. Huff, Esquire of Murphy & Landon, of Wilmington, Delaware. *Attorneys for Defendant.*

**MEDINILLA, J.**

# I.    INTRODUCTION

Nine Plaintiffs, retired firefighters for the City of Wilmington ("Defendant" or "City"), bring breach of contract claims that allege the unlawful denial of health insurance benefits under their Collective Bargaining Agreements in violation of both federal provisions of the Omnibus Consolidated Appropriations Act and the mandates found in Defendant's personnel policies.  Both sides seek judgment as a matter of law and filed cross-motions for summary judgment under Superior Court Civil Rule 56.  After consideration of the parties' written submissions and oral arguments, for the reasons stated below, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**, in part, and **DENIED**, in part.

# II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs James Brown, Barry Yerger, Robert Cunningham, Michael Lewis, Juan Gonzalez, Margaret Evans, Ameen Shabazz, Elbert Martin, and Kevin Malloy (collectively "Plaintiffs") retired as firefighters at various periods between 1996 and 2009.[1]  It is undisputed that each Plaintiff received a disability pension after Defendant determined that he or she was injured while in the line of duty.[2]

---

[1] The effective dates of retirement are as follows:  Mr. Brown, September 6, 1996; Mr. Yerger, October 17, 1996; Mr. Cunningham, February 26, 2000; Mr. Lewis October 31, 2001; Mr. Gonzalez, July 4, 2002; Ms. Evans, September 13, 2002; Mr. Shabazz, October 3, 2005; Mr. Martin, March 9, 2009; and Mr. Malloy, October 31, 2009.

[2] Def.'s Opening Br. at 1-5.

Plaintiffs were members of the Wilmington Firefighters Local 1590, International Association of Firefighters (the "Union"). The City entered into various Collective Bargaining Agreements ("CBAs") with the Union throughout the years relevant to this case. Four CBAs fall within relevant time periods—1995 through 1998, 1998 through 2001, 2001 through 2007, and 2007 through 2009.[3] The CBAs for Plaintiffs include language that called for the receipt of additional benefits outside the provisions of the CBAs.

Plaintiffs filed this instant action on June 22, 2016 against Defendant for breaches of contract, claiming that upon Plaintiffs' retirements, Defendant failed to comply with the provisions under their respective CBAs, the Omnibus Consolidated Appropriations Act ("Appropriations Act") or the City's personnel policies, specifically Policy 402.1.[4]

Trial is scheduled to begin February 4, 2019. On October 4, 2018, Defendant filed this first dispositive motion seeking summary judgment against all nine Plaintiffs and asserts various reasons for relief.[5] On October 17, 2018, Plaintiffs also moved for summary judgment requesting that all Plaintiffs should be deemed

---

[3] Def.'s Opening Br., Exs. W, X, Y, Z.

[4] Compl. ¶¶ 14-18.

[5] *See generally* Def.'s Opening Br.

eligible for additional benefits as a matter of law.[6] All written submissions on the cross-motions were filed timely. The Court heard oral arguments on December 17, 2018.

## III.  CONTENTIONS OF THE PARTIES

Defendant argues first that Plaintiffs fail to identify any specific agreement that has allegedly been breached. Specifically, where Plaintiffs rely on the language found in the Appropriations Act or Policy 402.1, Defendant contends that Plaintiffs cannot establish a private cause of action because they fail to satisfy the test established in *Cort v. Ash* (the "*Cort* test").[7] Defendant further maintains that any federal funding that may have been received by the City through the Appropriations Act was merely voluntary and does not trigger any obligation on the part of Defendant to offer more than what was already provided and received by Plaintiffs under their CBA.[8] Defendant claims also there can be no breach of the CBA by any alleged violation of Policy 402.1 because a policy, by definition, is not covered under the "Ordinances and Statutes" Article of the CBA.[9] Lastly, Defendant argues that 10 *Del. C.* § 8111 limits or bars Plaintiffs' claims, and alternatively argues that

---

[6] *See generally* Pls.' Opening Br.

[7] 422 U.S. 66 (1975). *See also* Def.'s Opening Br. at 9-12.

[8] Def.'s Opening Br. at 15-16.

[9] *Id.* at 18.

4

Plaintiffs' damages for breach of contract should be limited to the applicable three year statute of limitations under 10 *Del. C.* § 8106.[10]

Conversely, Plaintiffs argue that summary judgment is warranted because they have met the requirements under Policy 402.1 as a matter of law.[11] In support, Plaintiffs argue that "[d]isability based upon heart conditions which have been determined to be work related are covered under Policy 402.1 as the heart conditions were due to the firefighters responding to emergency situations."[12] Next, Plaintiffs argue that Policy 402.1 should apply retroactively because the Policy includes references to federal legislation that dates back to 1996.[13]

## IV.  STANDARD OF REVIEW

The burden of proof on a motion for summary judgment falls on the moving party to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the

---

[10] Def.'s Opening Br. at 25-28.

[11] Pls.' Opening Br. at 10.

[12] *Id.* at 5.

[13] *Id.* at 7-8.

[14] Super. Ct. Civ. R. 56(c).

5

"existence of one or more genuine issues of material fact."[15] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[16] "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[17] On a motion for summary judgment, the Court "will not indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[18]

Also, when cross-motions for summary judgment are filed, it "does not act *per se* as a concession that there is an absence of factual issues."[19] If cross-motions for summary judgment are filed it "does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion."[20] The

---

[15] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3-4 (Del. 1995). *See also* Rule 56(e); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[16] *Ebersole v. Lowengrub*, 180 A.2d 467, 469-70 (Del. 1962).

[17] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[18] *In re Asbestos Litigation*, 509 A.2d 1116, 1118 (Del. Super. 1986) (citations omitted).

[19] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997) (emphasis in original).

[20] *Id.*

moving party "concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[21]

## V. DISCUSSION

Plaintiffs rely on the provisions of their respective CBAs, the Appropriations Act, and Policy 402.1 in support of their claims for breach of contract. The Court addresses the relevant provisions of each as follows:

Each of the CBAs applicable to this case includes an Article entitled "Ordinances and Statutes."[22] The "Ordinances and Statutes" Article provides:

> In the event any ordinances or statutes relating to the members of the Fire Department provide or set forth benefits or terms in excess of or more advantageous than the benefits or terms of this Agreement, the provisions of such ordinances or statutes shall prevail. In the event this Agreement provides or sets forth benefits or terms in excess of or more advantageous than those provided or set forth in any such ordinance or statute, the provisions of this Agreement shall prevail.[23]

On July 12, 2005, Defendant created its Personnel Policy 402.1 entitled "Public Safety Officers Health Benefits."[24] It states:

---

[21] *United Vanguard Fund*, 693 A.2d at 1079 (citations omitted).

[22] Def.'s Opening Br., Exs. W, X, Y, Z.

[23] *Id.*, Ex. W at 28.

[24] *Id.*, Ex. B [hereinafter Policy 402.1].

7

The City of Wilmington *shall* provide the same level of health insurance benefits to a public safety officer who retires or is separated from service as a direct or proximate result of a personal injury sustained in the line of duty while responding to a hot pursuit or emergency situation, as the officer had when the incident occurred.[25]

This Policy was created in order to "provide a policy and procedure for addressing the Disabled Public Safety Officer's Health Act of 1996...."[26] It turns out that there is no statute enacted entitled Disabled Public Safety Employees Act of 1996. Defendant concedes that although there is no such statute, incredulously it remains referenced in Policy 402.1 to date.

If that didn't confuse the issues enough, Defendant clarified that the applicable statute that mirrors the language found in Policy 402.1 is found instead in the "Appropriations Act" in most fiscal years relevant to Plaintiffs' retirement dates. Specifically, beginning in 1996 for the fiscal year 1997, the Appropriations Act contained the following language:

> SEC. 615. Of the funds appropriated in this Act under the heading "OFFICE OF JUSTICE PROGRAMS—STATE AND LOCAL LAW ENFORCEMENT ASSISTANCE" and "Community Oriented Policing Services Program," not more than ninety percent of the amount to be awarded to an entity under the Local Law Enforcement Block Grant and part Q of title I of the Omnibus Crime Control and Safe Streets Act of 1968 shall be made available to such an entity when it is made known to the Federal official having authority to obligate or expend such funds that the entity that employs a public safety officer

---

[25] Policy 402.1 at 1 (emphasis added).

[26] *Id.*

8

(as such term is defined in section 1204 of title I of the Omnibus Crime Control and Safe Streets Act of 1968) does not provide such a public safety officer who retires or is separated from service due to injury suffered as the direct and proximate result of a personal injury sustained in the line of duty while responding to an emergency situation or a hot pursuit (as such terms are defined by State law) with the same or better level of health insurance benefits that are paid by the entity at the time of retirement or separation.[27]

The federal block grant appears to contemplate withholding a percentage of funding in the event that the municipality decided not to provide its retired or separated public safety officers injured in the line of duty—*while responding to an emergency situation or a hot pursuit*—with the same or better level of health insurance benefits that were paid by the municipality at the time of retirement. A nearly identical provision was included in the Appropriations Act for additional fiscal years, including 1998, 1999, 2001, 2002, 2003 and 2004.[28] Policy 402.1 was created one year later in 2005.

Having identified the relevant language that both sides asked the Court to consider, the respective motions for summary judgment are ripe for review.

---

[27] Def.'s Opening Br., Ex. CC.

[28] *Id.*, Exs. DD, EE, FF, GG, HH, II.

## A. Plaintiffs' Motion for Summary Judgment

Plaintiffs first assert they have established entitlement to benefits under Policy 402.1 as a matter of law because of a prior determination that they suffered a physical condition that was deemed to be job related. The Court disagrees.

The Wilmington City Code explains that certain diseases that result in total or partial disability are presumed to have been suffered while in the line of duty, but the Code does not include the "hot pursuit or emergency situation" language required to warrant eligibility under Policy 402.1. Although some Plaintiffs' injuries are presumed to have occurred in the line of duty, determination of disability did not make a finding required under Policy 402.1—that the injury was sustained in the line of duty *while responding to a hot pursuit or emergency situation.*[29] While it is true that the Plaintiffs qualified for benefits under what Plaintiffs refer to as the "Heart and Lung Bill,"[30] it cannot be accepted as a matter of law that receiving disability benefits through this City Code provision equates to the entitlement of benefits under Policy 402.1.

Second, Plaintiffs' argument that Policy 402.1 should apply retroactively is also without merit. Because this Court finds that Plaintiff's cannot establish they are

---

[29] Policy 402.1 at 1 (emphasis added).

[30] *Wilm. C.* ch. 39, § 39-179 (2018).

10

entitled to benefits under 402.1 as a matter of law as a result of their disability under the Heart and Lung Bill, Plaintiffs' Motion for Summary Judgment is **DENIED** as to all Plaintiffs. The Plaintiffs' arguments regarding whether Policy 402.1 should be applied retroactively are best addressed in Defendant's Motion for Summary judgment because they dovetail the same arguments raised by Defendant why summary judgment should be granted in its favor.

**B. Defendant's Motion for Summary Judgment**

### 1. Retired Firefighters before Creation of Policy 402.1 - No Breach of Contract under the CBAs Through Policy 402.1 or the Appropriations Act

Plaintiff takes considerable legal leaps in arguing that Policy 402.1 should apply retroactively through the Appropriations Act because both policy and statute language include identical language. Thus, Plaintiffs argue that Policy 402.1 should have been or was intended to have been created in 1996.

Although Plaintiffs are correct that the "hot pursuit" and "emergency situation" language appears in various iterations of the Appropriations Acts between fiscal years 1997 through 1999 and 2001 through 2004,[31] there is nothing in this record pre-2005 that the Appropriations Acts alone created "more advantageous benefits" referenced in the CBAs.[32] Federal funding may have been available

---

[31] *See* Def.'s Opening Br. at 8.

[32] *See id.* at 8-9. *See also id.*, Exs. CC, DD, EE, FF, GG, HH, II.

through various provisions of the Appropriations Acts that date back to 1996, but no authority was presented by Plaintiffs to support that access to this funding required municipalities to provide health insurance benefits to retired Plaintiffs prior to the enactment of Policy 402.1 in 2005. Also, without facts to support the nexus to Policy 402.1, any self-imposed obligations upon Defendant are not established until 2005, and nothing was presented to suggest any intention, implied or expressed, to apply Policy 402.1 retroactively to those who retired prior to 2005.

Without facts or authority to support their assumptions, a trier of fact would be required to speculate as to what impact potential federal funding provisions *may* have had on Plaintiffs' claims that date back to 1996.[33] For these reasons, this Court finds that where Plaintiffs rely upon the CBA to trigger the application of Policy 402.1, and the Policy was not in effect until 2005, there are no genuine issues of material fact that must be decided that would obligate Defendant to a retroactive application of the Policy through the Appropriations Act. Because certain Plaintiffs retired prior to Policy 402.1, there is no available breach of contract claim under their respective CBAs. Thus, Defendant's Motion for Summary Judgment must be granted as to Plaintiffs James Brown, Barry Yerger, Robert Cunningham, Michael Lewis, Juan Gonzalez, and Margaret Evans who retired prior to the creation of Policy

---

[33] The Court does not address the remaining issues raised by Defendant, including but not limited to, Statute of Limitation bars as to these Plaintiffs.

402.1. Summary judgment as to these Plaintiffs is **GRANTED** in favor of Defendant.

As to the three remaining Plaintiffs, this Court considers the relevant arguments raised in Defendant's Motion for Summary Judgment.

## 2. Retired Firefighters after Creation of Policy 402.1 in 2005 May Be Entitled to Benefits Under Breach of Contract Claims Under Their CBAs through Policy 402.1 and the Appropriations Act

Policy 402.1 establishes a procedure and policy for certain public safety officers to receive additional health insurance benefits.[34] These additional benefits are only provided if particular conditions are met.[35] Plaintiffs argue that the language of the policy alone implies a private cause of action. Defendant counters with *DeFelice v. Cummings* and asks this Court to follow the same analysis in Defendant's favor.[36]

In *DeFelice,* this Court similarly addressed whether a section of the City of Wilmington Code created a private cause of action through the application of the *Cort* test.[37] The *Cort* test was adopted by Delaware "to determine if a private cause

---

[34] *See generally* Policy 402.1

[35] *See id.* at 1.

[36] 2016 WL 4385077 (Del. Super. Aug. 16, 2016).

[37] *DeFelice,* 2016 WL 4385077, at *5-6.

13

of action under an otherwise silent statute exists."[38]  This test poses the following questions:

> (1) Is the Plaintiff of the class for whose special benefit the statute was enacted? (2) Is there any indication of a legislative intent, express or implied, to create a private remedy or deny one? (3) Is it consistent with the underlying purpose of the legislative plan to imply a private remedy?[39]

This Court determined that the *DeFelice* plaintiff was unable to satisfy the factors under *Cort* and found that "it is clear that the Code is more of an internal guideline governing the disciplinary and grievance proceedings...."[40]  The Court held that there was no genuine issue of material fact established by the plaintiff and granted summary judgment in favor of the defendants.[41]

Likened more to these facts, Defendant also cites to *Torres v. Sussex County Council*,[42] where the plaintiff claimed he was wrongfully terminated due to the defendant's failure to follow the procedures outlined in the Sussex County Personnel

---

[38] *Id.* at *5.

[39] *Id.* at *6 (quoting *Miller v. Spicer*, 602 A.2d 65, 67 (Del. 1991); citing *Torres v. Sussex County Council*, 2014 WL 7149179, at *3 (Del. Super. Dec. 8, 2014)).

[40] *Id.* (citing *Torres*, 2014 WL 7149179, at *4).

[41] *Id.* (finding that plaintiff failed to satisfy *Cort* test to establish private cause of action).  The Court additionally held that even if the City Code provided a private cause of action, this claim would be barred by the County and Municipal Tort Claims Act. *Id.* at *7.

[42] 2014 WL 7149179 (Del. Super. Dec. 8, 2014).

14

Code, which that Court referred to as an "ordinance."[43]  That Court explained that the ordinance was "more akin to an internal guideline, which does not have the force of law, than a statutory prohibition."[44]  The Court held that the ordinance did "not create a private cause of action for the tort of wrongful termination" and dismissed that count of the complaint.[45]  Under *Torres* and *DeFelice*, the internal guidelines there did not have the force of law and the failure to comply with said guidelines could not support a basis for a private cause of action.[46]

Here, Plaintiffs are not seeking relief from a disciplinary and grievance procedure, nor are they alleging wrongful termination.  Here, they seek redress through various avenues, including Policy 402.1.  The policy is not discretionary.  Instead, it orders the City to provide the same level of health insurance benefits to a public safety officer who retires or is separated from service as a direct or proximate result of a personal injury sustained in the line of duty while responding to a hot pursuit or emergency situation.

Defendant is correct that a policy does not fall within the definition of a statute or an ordinance.  A policy is defined as a "standard course of action that has been

---

[43] *Torres*, 2014 WL 7149179, at *1.

[44] *Id.* at *4.

[45] *Id.* at *5.

[46] *See, e.g., Torres*, 2014 WL 7149179, at *4; *DeFelice*, 2016 WL 4385077, at *6.

15

officially established by an organization, business, political party, etc."[47] A statute is defined as a "law passed by a legislative body...."[48] An ordinance is an "authoritative law or decree; specif., a municipal regulation, esp. one that forbids or restricts an activity."[49] However, it is unnecessary to decide whether Policy 402.1 is merely an internal guideline or whether its mandate meets the *Cort* test because Plaintiffs rely not only on Policy 402.1 but on two other relevant legal bodies—the provisions in the mirrored statutory language found in prior iterations of the Appropriations Act and their respective CBAs.

The post-2005 Plaintiffs have presented evidence of a tripod effect—1) Defendant's reference in Policy 402.1 to the "Disabled Public Safety Officer's Health Act of 1996" (clarified as the Appropriations Act); 2) its self-imposed policy that parrots the statutory language found in the Appropriations Act; and 3) CBAs that expressly invoke contractual obligations on Defendant to provide benefits beyond the CBA.[50] Plaintiffs' triangular approach involves not only the language of one personnel policy that may or may not be deemed an "internal guideline," but

---

[47] *Policy*, Black's Law Dictionary (10th ed. 2014).

[48] *Statute*, Black's Law Dictionary (10th ed. 2014).

[49] *Ordinance*, Black's Law Dictionary (10th ed. 2014).

[50] The Court recognizes that the Appropriations Act post-2005 includes different language from earlier iterations of the Act. Notably, the relevant language from the pre-2005 Appropriations Act was incorporated into Policy 402.1 in 2005.

also the additional provisions found in their Union contracts and federal law. As such, this case is distinguishable from *DeFelice and Torres*.

The Appropriation Act—in conjunction with Policy 402.1—may serve as the requisite conduits that may trigger Plaintiffs' rights to pursue benefits that could have been deemed more "advantageous" under their CBAs. These rights may be found generally in their CBAs, or alternatively through the "Ordinances and Statutes" Article found within the CBA. Where the Defendant created mandates under Policy 402.1 that mirror the statutory language found in the Appropriation Act, there is a genuine issue of material fact as to whether the coupling of both policy and the Act invokes the "Ordinances and Statutes" provisions under the CBAs that would allow Plaintiffs to exercise their rights to better health care insurance benefits mandated in Policy 402.1.

In addition, although Messieurs Shabazz, Martin, and Malloy retired after 2005, the Court finds that Mr. Shabazz's breach of contract claim is barred by the three-year statute of limitations.[51] Mr. Shabazz was aware of the Policy and applied for Policy 402.1 benefits through the Fire Chief at the time, Willie J. Patrick, Jr.[52] In a Memorandum dated July 13, 2007, Mr. Shabazz was informed that he did not

---

[51] *See* 10 *Del. C.* § 8106.

[52] *See* Def.'s Opening Br., Ex. P.

17

qualify for these benefits.[53] After he was on notice that he did not qualify, Mr. Shabazz did nothing until 2016 when the Complaint was filed. Therefore, Mr. Shabazz's breach of contract claim is barred by the applicable three-year statute of limitations under 10 *Del. C.* § 8106.

As to Mr. Martin and Mr. Malloy, the arguments related to time bars are unclear.[54] Defendant argues in its opening brief that that statute of limitations for a breach of contract claim is three years under 10 *Del. C.* § 8106 and that Plaintiffs may make a "claim for the cost of past health benefits in the three (3) years prior to June 22, 2016, or stated differently, beginning on June 22, 2013."[55] Defendant then argues in its reply that "the three year statute of limitations on the breach of contract claims ran on the following dates..."[56] or three years after each Plaintiff retired with time bars that limit Plaintiffs' claims.[57] Notably, this issue is raised for the first time in this first dispositive motion, and this Court will not attempt to reconcile the inconsistent positions taken by Defendant. For purposes of this record, the Court

---

[53] *See* Def.'s Opening Br., Ex. P.

[54] This Court does not address Defendant's argument that a one-year statute of limitation under 10 *Del. C.* § 8111 also applies in this case because the Court does not address whether there is a private right of action and the issue for the fact-finder focuses on breach of contract claims.

[55] Def.'s Opening Br. at 28. The Complaint was filed on June 22, 2016, therefore Defendant argues that Plaintiffs are barred from recovering damages prior to June 22, 2013, or three years prior to the Complaint being filed. *Id.* at 26-27.

[56] Def.'s Reply Br. at 15.

[57] *See* Def.'s Opening Br. at 26-28; Def.'s Reply Br. at 15.

accepts Plaintiffs' arguments that a genuine issue of material fact exists whether Defendant's failure to provide benefits constitute ongoing breaches. Depending on the evidence presented, the Court will consider a clearer argument from Defendant that may limit recovery as to the two remaining Plaintiffs.

In addition, Messieurs Martin and Malloy have established the existence of genuine issues of material fact in support of their claims. One dispute is whether the Chief of Fire was aware of the mandates regarding his obligations to the retiring firefighters who may have qualified for benefits under Policy 402.1. Under Policy 402.1, the "Chief of Fire *shall* notify the Director of Personnel of a law enforcement officer separating from employment with the City of Wilmington who may qualify for this benefit due to the circumstances of his separation."[58] Through deposition, the record establishes that the former Chief of Fire, Willie J. Patrick, Jr., was not aware of his responsibility to notify the Director of Personnel.[59] Yet, there is evidence that Mr. Patrick must have known of the Policy because he sent a Memorandum in June of 2007 to the Director of Personnel on behalf of Mr. Shabazz (and others) requesting benefits under Policy 402.1.[60] A factual dispute exists

---

[58] Policy 402.1 at 2 (emphasis added).

[59] Pls.' Answering Br., Ex. B at 12.

[60] Def.'s Opening Br., Ex. P.

whether the Chief of Fire had knowledge of the Policy and notified the Director of Personnel that a retiring employee may qualify for additional benefits.[61]

The record also establishes that some other retired employees applied and received benefits under the Policy while others were unaware that they could apply despite prior determinations by Defendant that they were injured in the line of duty and may have qualified under Policy 402.1. The allegations of disparate and arbitrary use of the Policy as well as what was known regarding the obligations under the policy are in dispute as to remaining Plaintiffs. With all reasonable inferences drawn in favor of Plaintiffs, there exist genuine issues of material fact that preclude summary judgment as to Plaintiffs Elbert Martin and Kevin Malloy.

## VI. CONCLUSION

Plaintiffs have not satisfied their burden under Superior Court Civil Rule 56 and therefore Plaintiffs' Motion for Summary Judgment is **DENIED.** Defendant has satisfied its burden under Rule 56 as to some Plaintiffs and the Court finds summary judgment is **GRANTED** in favor of Defendant as to Plaintiffs James Brown, Barry Yerger, Robert Cunningham, Michael Lewis, Juan Gonzalez, Margaret Evans, and Ameen Shabazz. Because there exist genuine issues of material

---

[61] *See generally* Policy 402.1.

fact as to Plaintiffs Elbert Martin and Kevin Malloy's breach of contract claims, Defendant's Motion for Summary Judgment is **DENIED**, as to these Plaintiffs.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

cc: All Counsel of Record (*via File&Serve)*