# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAXWELL A. AMOAKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. K24C-03-026 NEP |
| | ) | |
| CLAYTON POLICE DEPARTMENT, | ) | |
| DANIEL HUME, | ) | |
| PROVIDENCE CREEK ACADEMY, and | ) | |
| DENISE STOUFFER, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 15, 2024
Decided: July 31, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff's Motion for Default Judgment*
**DENIED**

*Upon Defendants Daniel Hume and the Town of Clayton's Motion to Dismiss*
**GRANTED**

*Upon Defendants Providence Creek Academy and Denise Stouffer's Motion to Dismiss*
**GRANTED**

*Upon Plaintiff's Motion to Include Son as Plaintiff*
**DENIED**

Maxwell A. Amoako, Dover, Delaware, *Plaintiff (Self-Represented)*.

James D. Taylor, Esquire, Jessica M. Jones, Esquire, and Juliana G. Clifton, Esquire, Saul Ewing LLP, Wilmington, Delaware, *Attorneys for Defendants Providence Creek Academy and Denise Stouffer*.

Daniel A. Griffith, Esquire, and Thomas Wallace, Esquire, Whiteford, Taylor & Preston LLC, Wilmington, Delaware, *Attorneys for Defendants the Town of Clayton and Daniel Hume*.


**Primos, J.**

# I.  INTRODUCTION[1]

Plaintiff Maxwell Amoako ("Amoako") is a parent of two children, a daughter and a son, who attend Defendant Providence Creek Academy ("PCA").  PCA is a public charter school in Clayton, Delaware.  Defendant Daniel Hume ("Hume") is a corporal employed by the Town of Clayton, Delaware,[2] and works as a resource officer at PCA.  Defendant Denise Stouffer ("Stouffer") is the Principal/Head of School of PCA.  PCA and Stouffer are referenced herein collectively as "the PCA Defendants."  The Town of Clayton and Hume are referenced herein collectively as "the Clayton Defendants."

Before the Court are four motions and their responses, respectively.  Amoako has filed a motion for default judgment and a motion to include his son as a plaintiff.  The Clayton Defendants and the PCA Defendants have each filed motions to dismiss.

Default judgment against the Clayton Defendants is **DENIED** because those defendants had entered an appearance in this case before the motion for default judgment was filed.  Both motions to dismiss are **GRANTED** because Amoako's claims are not reasonably conceivable.  Amoako's motion to amend his complaint to include his son as a plaintiff is **DENIED** as futile.

---

[1] Citations in the form of "Ex. __ at __" refer to the exhibits accompanying the complaint. Citations in the form of "D.I. __" or "(D.I. __)" refer to docket items.

[2] The complaint erroneously designates the "Clayton Police Department" as Hume's employer. For purposes of the motions, the Town of Clayton will be considered the appropriate defendant.

## II. BACKGROUND[3]

### A. FACTS

On October 29, 2021, Amoako's five-year-old son, L.A.,[4] then in kindergarten at PCA, was supposed to go to aftercare; however, L.A. was erroneously placed on a school bus by an art teacher.[5] Although L.A. told the teacher that he was not supposed to be on the bus, the teacher forced him to get on the bus, and as a result, L.A. remained unattended at a bus stop in rain and heavy wind and was missing for over two hours.[6] On November 1, 2021, Amoako sent an email to Stouffer voicing his concern, requesting an investigation, and seeking clarity.[7] Deeply troubled from this incident, Amoako decided to pick up his children personally from aftercare thereafter for their safety and well-being.[8]

---

[3] The following recitation of the facts is drawn from the complaint and the exhibits thereto, which consist of certain email exchanges. *See* Compl. (D.I. 1) ¶ 3.2 (citing Ex. A); *id.* ¶ 3.8 (citing Ex. B); *id.* ¶ 3.12 (citing Ex. C). The Delaware Supreme Court has made clear that materials that are neither attached to, nor incorporated by reference into, a complaint may not be considered in ruling on a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6) without converting the motion into one for summary judgment. *Wal-Mart Stores, Inc. v. AIG Life Ins.*, 860 A.2d 312, 320 (Del. 2004). Here, however, the email exchanges in question are both attached to the complaint and referenced as exhibits. *Cf. e4e, Inc. v. Sircar*, 2003 WL 22455847, at *3 (Del. Ch. Oct. 9, 2003) (noting that the document in question was neither attached to complaint nor incorporated by reference but was considered in context of motion to dismiss because it was extensively referenced in and integral to complaint). Although Amoako did not expressly incorporate these exhibits by reference into his complaint or significantly refer to them therein, the fact that they are attached and referenced as exhibits leads this Court to the conclusion that it should consider them in deciding the motions to dismiss, particularly in light of the liberal construction to be afforded *pro se* pleadings, *see* footnote 35 below, and that it need not convert the motions to dismiss to motions for summary judgment pursuant to Superior Court Civil Rule 12(b).

[4] Although Amoako's son, a non-party minor, is named in two of the exhibits to the complaint and in Amoako's motion to include him as a plaintiff, the Court has chosen to refer to him by his initials to protect his privacy. *Cf.* Supr. Ct. R. 7(d) (pseudonyms used in Court's discretion to protect identity of non-parties).

[5] Compl. ¶¶ 3.8, 3.9; *see also* Ex. B at 1.

[6] Compl. ¶¶ 3.8, 3.9.

[7] *See generally* Ex. B.

[8] Compl. ¶ 3.10.

At an unspecified time, likely during the 2022–2023 school year, L.A. was erroneously placed in an "English learner" class despite being born in the United States and being a native English speaker.[9] On June 7, 2023, Amoako sent an email to Stouffer voicing his concern regarding the educational misidentification and misclassification of his children and specifically L.A.'s misidentification as an English learner.[10] The issue was promptly resolved before the beginning of the 2023–2024 school year, as Amoako had requested.[11]

On November 2, 2023, a PCA teacher falsely accused Amoako's daughter of stealing.[12]

On March 12, 2024, Amoako arrived at PCA after normal school hours to pick up his children in the aftercare line at the lower school, as he had been doing twice a week for seven months in accordance with a "previous arrangement made between [him] and aftercare."[13] To his surprise, however, the pick-up routine had changed.[14] Amoako was met by Hume, who accused him of trespassing, demanded identification, and threatened to arrest him.[15] When Stouffer found out that there was an unhappy parent outside, she left a meeting to address the matter.[16] Upon arrival, she indicated that she knew that Amoako was a parent, but could not recall his name.[17] Later that evening, Amoako sent an email to Stouffer voicing his

---

[9] *Id.* ¶ 3.12.
[10] Ex. C at 1–4.
[11] *See generally id.*
[12] Compl. ¶ 3.11.
[13] Ex. A at 1. *See also id.* at 2–3; Compl. ¶ 3.1.
[14] Ex. A at 1. Amoako alleges that he never received any communication about it, even though an email had been forwarded to all parents via Dojo regarding this issue. *E.g.*, *id.* at 2–3.
[15] Compl. ¶¶ 3.2–.3.
[16] Ex. A at 3–4. Apparently, it was the dean of students who informed Stouffer, not Hume. *Id.* at 4.
[17] *Id.* at 1, 4.

feelings and concerns.[18]   Throughout the ensuing days, the parties spoke and continued to exchange emails to try to air out the tension.[19]   This suit followed.

## B. PROCEDURAL HISTORY

On March 21, 2024, Amoako filed a *pro se* complaint against Defendants.[20] The complaint designates four counts:

> **Count 1** – illegal search and seizure of Amoako's person, against the Clayton Defendants;
> **Count 2** – violation of equal protection, against both sets of Defendants;
> **Count 3** – failure to train and supervise employees, against the PCA Defendants; and
> **Count 4** – failure to properly assess and place students, against PCA.[21]

Amoako requests compensatory and punitive damages, injunctive relief,[22] and reasonable costs incurred for filing fees and loss of income.[23]   On March 25, 2024, service of the complaint was effected upon all Defendants.[24]   On March 26, 2024, counsel entered an appearance for the Clayton Defendants.[25]   On April 12, 2024, separate counsel entered an appearance for the PCA Defendants.[26]

On April 15, 2024, the PCA Defendants filed a motion to dismiss pursuant to Delaware Superior Court Civil Rule 12(b)(6) ("Rule 12(b)(6)") for failure to state a

---

[18] *Id.* at 1.
[19] *See generally id.* at 1–5.
[20] Compl. ¶¶ 1.1–1.6.
[21] *Id.* ¶¶ 4.1–4.4.
[22] Although this request for relief is rendered moot by the Court's decision on these motions, the Court would have been unable to grant injunctive relief in any event. 10 *Del. C.* § 341; *see, e.g.*, *Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *2 (Del. Ch. Nov. 5, 2004).
[23] *Id.* ¶¶ 5.1–5.5.
[24] D.I. 3–6.
[25] D.I. 7.
[26] D.I. 8.

claim upon which relief can be granted.[27]  The next day, on April 16, 2024, Amoako filed a motion for default judgment.[28]

On April 17, 2024, new counsel entered an appearance on behalf of the Clayton Defendants.[29]  On April 23, 2024, Amoako filed a motion to include his son as a plaintiff.[30]  That same day, the Clayton Defendants filed a motion to dismiss pursuant to Rule 12(b)(6).[31]

The Court is now ready to render decisions on the four motions before it.

## III.  STANDARD OF REVIEW

When the Court reviews a motion to dismiss, it must:

(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [  ] not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[32]

---

[27] Defs. Providence Creek Academy's and Denise Stouffer's Mot. to Dismiss (D.I. 9) [hereinafter "PCA Defs.' Mot. to Dismiss"] ¶ 1.

[28] D.I. 10.  The motion seeks default judgment "against the Defendant," but fails to designate which Defendant or Defendants is the subject of the motion.  On May 6, 2024, along with his response to the Clayton Defendants' motion to dismiss, Amoako filed a "Certificae [sic] in Support of Motion of Default" in which he stated that the motion for default had been filed "against all defendants" but that default judgment was being sought only against the Clayton Defendants. *See* Certificae [sic] in Supp. of Mot. of Default (included in D.I. 23) ¶¶ 4, 7.

[29] D.I. 13.  On April 18, 2024, the previous counsel for the Clayton Defendants filed a motion for substitution of counsel.  D.I. 14.

[30] D.I. 15 [hereinafter "Mot. to Include Son as Pl."].

[31] Defs. Daniel Hume's and the Town of Clayton's (Improperly Pled as the Clayton Police Dep't) Mot. to Dismiss (D.I. 18) [hereinafter "Clayton Defs.' Mot. to Dismiss"] ¶ 1.

[32] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

The Court, however, need not accept conclusory allegations unsupported by the facts or draw unreasonable inferences in favor of the non-moving party,[33] nor should it draw conclusions of law or fact "where there are no allegations of specific facts which would support such conclusions."[34]

## IV. LEGAL CLAIMS ASSERTED BY AMOAKO

*Pro se* pleadings are construed more liberally than those filed with counsel.[35] In that light, while Amoako's complaint lists four causes of action, the Court has identified six potential claims being asserted:

**1.** Violation of Article I, Section 6 of the Delaware Constitution for an illegal search and seizure — against the Clayton Defendants;
**2.** Negligent placement of his son on a school bus — against the PCA Defendants;
**3.** Violations of equal protection rights under Article I, Section 21 of the Delaware Constitution — against all Defendants;
**4.** Violations of the Equal Accommodations Act — against the PCA Defendants;
**5.** Negligence for failure to train and supervise — against the PCA Defendants; and
**6.** Educational malpractice — against the PCA Defendants.[36]

There is no different set of rules for *pro se* litigants,[37] however, and the Court will not disregard or rewrite controlling law to accommodate a *pro se* party.[38]

---

[33] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009); *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871 (Del. 2020).
[34] *Weinberger v. UOP, Inc.*, 409 A.2d 1262, 1264 (Del. Ch. 1979).
[35] *Griffin v. Ramirez*, 2021 WL 5577261, at *1 (Del. Super. Nov. 30, 2021); *Tigani v. Fisher Dev. Co.*, 2022 WL 1039969, at *2 (Del. Super. Apr. 6, 2022).
[36] Compl. ¶¶ 3.11–.14.
[37] *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001); *Tigani*, 2022 WL 1039969, at *2.
[38] *Tigani*, 2022 WL 1039969, at *2.

## V.    ANALYSIS

### A. AMOAKO'S MOTION FOR DEFAULT JUDGMENT MUST BE DENIED.

The Court begins with the motion for default judgment, because if the Clayton Defendants are found to be procedurally in default, then the Court need not reach the merits of their motion to dismiss.  The threshold issue is thus whether the Court should enter default judgment in favor of Amoako and against the Clayton Defendants pursuant to Superior Court Civil Rule 55(b) ("Rule 55(b)") because they failed to file a responsive pleading or motion to dismiss within the required twenty days, although they entered an appearance promptly after the complaint was filed.[39] For the reasons explained below, the Court will not enter default judgment against the Clayton Defendants.

Rule 55(b) provides that a default judgment may be entered in a situation in which "a party against whom a judgment for affirmative relief is sought, **has failed to appear, plead or otherwise defend**."[40]  Public policy favors denying a motion for default judgment so that parties may have their day in court.[41]  Accordingly, default judgment is employed only in extraordinary circumstances.[42]  Discretion rests with the Court.[43]

In *Holland v. Sterling*,[44] this Court held that default judgment under Rule 55(b) was unavailable where, as here, the defendant had entered an appearance.[45]

---

[39] Because the PCA Defendants timely filed a motion to dismiss the complaint, the motion for default judgment is clearly inapplicable to them.

[40] Super. Ct. Civ. R. 55(b) (emphasis supplied).

[41] *Battaglia v. Wilm. Sav. Fund Soc'y*, 379 A.2d 1132, 1135 (Del. 1977); *Tsipouras v. Tsipouras*, 677 A.2d 493, 496 (Del. 1996).

[42] *Dority v. vanSweden*, 1995 WL 1791080, at *1 (Del. Ch. Jan. 17, 1995).

[43] *Id.*

[44] 1988 WL 130385 (Del. Super. Nov. 29, 1988).

[45] *Id.* at *1 (citing *Del. Sand & Gravel Co. v. Bryson*, 414 A.2d 207 (Del. 1980)).

Moreover, the case *sub judice* is stronger than *Holland* because there, the entry of appearance was filed ***after*** the motion for default judgment was filed.[46]  In contrast, here, the entry of appearance on behalf of the Clayton Defendants was filed ***before*** the motion for default judgment—indeed, it was filed **one day** after the complaint was served.[47]  Pursuant to Rule 55(b), default judgment is available against a party only in a situation in which that party has done nothing in response to the suit, i.e., the party has not appeared, pled, or otherwise defended.  Thus, default judgment is not available against the Clayton Defendants because an appearance was entered on their behalf before a motion for default judgment was filed.[48]

## B.  THE MOTIONS TO DISMISS BY BOTH SETS OF DEFENDANTS MUST BE GRANTED.

### 1.  All Claims Against The Clayton Defendants Alleging Illegal Search And Seizure Must Be Dismissed.

Amoako argues that the Clayton Defendants violated Article I, Section 6 of the Delaware Constitution because of an illegal search and seizure on March 12, 2024, when "Hume confronted [him] and unlawfully detained [him], accusing [him] of trespassing on school property and demanding identification without reasonable suspicion or probable cause."[49]  In response, the Clayton Defendants' argument is two-fold:  first, that there is no private right of action to obtain damages under Article

---

[46] *Id.*

[47] D.I. 3–4, 7.  Although the Clayton Defendants' initial counsel entered an appearance on behalf of the Clayton Police Department, which was an improperly named defendant, the Court sees no material difference.  If anything, this cuts against Amoako because he named an incorrect party.

[48] Additionally, the Clayton Defendants filed their motion to dismiss shortly after they were put on notice of a potential default.  D.I. 18.

[49] Compl. ¶ 3.2.

1, Section 6;[50] and second, that the Delaware County and Municipal Tort Claims Act ("DCMTCA")[51] bars any tort claims against them.[52]

### a. *There is no private right of action under Article I, Section 6.*

In *Schueller v. Cordrey,*[53] this Court granted the defendants' motion to dismiss an excessive force claim brought pursuant to Article I, Section 6, reasoning that the plaintiff had "alternative remedies available to him through common law tort action for battery or gross negligence, both of which would allow" him to recover damages.[54] In reaching its conclusions, the Court noted that Article I, Section 6 does not expressly mention excessive force or the requirements for bringing such an action, that creating a new cause of action would impose huge financial burdens on governmental entities, and that the legislature is the best entity to create a new cause of action.[55] For similar reasons, there is no private right of action here. Even if there were, it would be barred by the DCMTCA.

### b. *The DCMTCA bars any common law claims for damages against the Clayton Defendants.*

The Clayton Defendants argue that, to the extent Amoako's complaint is liberally read to include common law claims against them, those claims are barred by the DCMTCA because no exception to immunity applies.[56] The Clayton Defendants cite to *Fiat Motors of North America, Inc. v. Mayor and Council of City of Wilmington*[57] for the argument that "except as otherwise expressly provided by

---

[50] Clayton Defs.' Mot. to Dismiss ¶ 1.
[51] 10 *Del. C.* §§ 4010–4013.
[52] Clayton Defs.' Mot. to Dismiss ¶ 1.
[53] 2017 WL 568344 (Del. Super. Feb. 13, 2017).
[54] *Id.* at *2.
[55] *Id.*
[56] Clayton Defs.' Mot. to Dismiss ¶¶ 8–11.
[57] 498 A.2d 1062 (Del. 1985).

11

statute, all governmental entities (and their employees) shall be immune from suit on any and all tort claims seeking recovery of damages."[58] The Court agrees.

There are three exceptions laid out in 10 *Del. C.* § 4012 that would allow for tort liability against the Town of Clayton, provided, however, that the negligent acts or omissions caused property damage, bodily injury, or death:

> (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.
> (2) In the construction, operation, or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities, or equipment designed for use primarily by the public in connection with public outdoor recreation.
> (3) In the sudden and accidental discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalines, and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water.[59]

Here, Amoako does not allege any property damage, bodily injury, or death among those situations listed above and, thus, no exception from the DCMTCA is applicable.[60] As to Hume, an employee may be personally liable for acts or omissions causing property damage, bodily injury, or death in a situation in which

---

[58] Clayton Defs.' Mot. to Dismiss ¶ 9 (quoting 10 *Del. C.* § 4011(a)).

[59] 10 *Del. C.* § 4012(1)–(3).

[60] In response to the Clayton Defendants' motion to dismiss, Amoako states that his claims "are not solely based on property damage, bodily injury, or death, but rather on the violation of constitutional rights, including the Fourth and Fourteenth Amendments." Pl.'s Resp. Mot. to Dismiss by Officer Daniel Hume and Clayton Police Department (D.I. 23) ¶ 10. There is no reference to any federal constitutional claims in the complaint, however, as the complaint explicitly relies upon alleged violations of the Delaware Constitution alone. The Court, despite its liberal construction of claims by *pro se* plaintiffs, will not create a different set of rules for Amoako by inferring a federal cause of action where none is stated in the complaint. *Tigani*, 2022 WL 1039969, at *2; *Griffin*, 2021 WL 5577261, at *1; *Reylek v. Albence*, 2023 WL 4633411, at *3 (Del. Super. July 19, 2023).

the governmental entity is immune, but only for those acts or omissions which were not within the scope of employment, or which were performed with wanton negligence or willful and malicious intent.[61] Again, Amoako does not allege any property damage, bodily injury, or death for an act or omission that was outside of Hume's scope of employment, let alone any wanton negligence or willful and malicious intent. Thus, no exception to the DCMTCA is applicable.

In sum, the illegal search and seizure claim against the Clayton Defendants should be dismissed because there is no private right of action under Article I, Section 6 and, even if there was, the DCMTCA bars any state law tort claims in a situation in which no exception is applicable.

### 2. The Claim For Negligent Placement Of Amoako's Son On A Bus Fails.

Amoako cannot pursue claims on behalf of his son, L.A., under the current complaint; however, he has filed a motion to add his son as a plaintiff. Nevertheless, even if his son was added as a plaintiff, the negligence claim based on this incident is barred by the applicable statute of limitations: under Delaware law, the statute of limitations for a negligence claim is two years.[62]

Here, Amoako characterizes the October 29, 2021, misplacement of his son on a school bus as negligent conduct.[63] That claim is time-barred, however, because he filed his complaint on March 21, 2024, nearly five months beyond Delaware's

---

[61] 10 *Del. C.* § 4011(c).

[62] 10 *Del. C.* § 8119 (Actions "for the recovery of damages upon a claim for alleged personal injuries" are governed by a two-year statute of limitations from the date of the accident); *Harper v. State Farm Mut. Auto. Ins.*, 703 A.2d 136, 137 (Del. 1997) ("Lawsuits based upon common law principles of negligence are subject to the two-year statute of limitations in 10 *Del. C.* § 8119."); *Sands v. Del. Dep't of Corr.*, 2017 WL 3311234, at *1 (Del. Super. Aug. 2, 2017) (explaining same).

[63] *See* Mot. to Include Son as Pl. at 1 ("On October 29, 2021, [Amoako's son] was subjected to an incident of gross negligence and breach of duty by [the PCA Defendants].").

13

two-year statute of limitations.  Accordingly, the Court need not analyze whether such claims could survive application of the Delaware State Tort Claims Act.[64]

### 3. The Equal Protection Claims Must Be Dismissed.

Amoako asserts a claim for a violation of equal protection pursuant to Article I, Section 21 of the Delaware Constitution, based on failure to train and supervise.[65] He further alleges other discriminatory actions, namely, Hume's actions relating to the alleged search and seizure,[66] the false theft accusation against his daughter,[67] the erroneous class placement of his son,[68] and the negligent placement of his son on a school bus.[69]

In response, the PCA Defendants argue that Amoako cannot recover under any reasonably conceivable set of circumstances because Amoako has not "(1) alleged membership in any protected class; (2) identified individuals outside that class who were treated more favorably *as a result of PCA's or* [ ] *Stouffer's* purported training or supervision; or (3) alleged any 'difference in treatment' *due to* [his] protected status."[70]  The Clayton Defendants also argue for dismissal of

---

[64] 10 *Del. C.* §§ 4001–4006.

[65] "[T]he School District failed to adequately train and supervise its employees, including but not limited to [ ] Hume, resulting in the violation of [Amoako's] rights under Article 1, Section 21 of the Delaware Constitution …."  Compl. ¶ 3.13.

[66] *Id.* ¶ 3.5.

[67] On November 2, 2023, "a teacher (Ms. Crawford) falsely accused [Amoako's] daughter of stealing, despite her innocence and later found untrue.  This unfounded accusation not only caused emotional distress but also represents a pattern of discriminatory treatment and harassment directed towards her."  *Id.* ¶ 3.11.

[68] Amoako's son "was erroneously placed in an English learner class for an entire academic year without [Amoako]'s knowledge or consent.  Despite being a native English speaker born in the United States and not experiencing any difficulties in class, [Amoako]'s son was subjected to an inappropriate educational placement.  This discriminatory treatment deprived [Amoako]'s son of educational opportunities."  *Id.* ¶ 3.12.

[69] "[T]he abandonment of [Amoako]'s son by a bus driver illustrate[s] a repeated pattern of discrimination within [PCA]'s policies and practices."  *Id.* ¶ 3.14.

[70] PCA Defs.' Mot. to Dismiss ¶ 8 (emphasis in original).  *See also id.* ¶ 7.

14

Amoako's equal protection claims against them on the basis that no private right of action is authorized under Article I, Section 21.[71]

Delaware's equal protection clause can be found in Article I, Section 21, of the Delaware Constitution and provides that "Equality of rights under the law shall not be denied or abridged on account of race, color, national origin, or sex."[72]  To establish a claim for a violation of equal protection rights, a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he was treated differently from similarly situated persons outside of the class; and (3) the difference in treatment was due to the protected class.[73]

### a. Amoako's equal protection claims regarding the incident with Hume must be dismissed.

Amoako's discrimination claims relating to the incident with Hume are both included in the general allegations regarding failure to train and supervise[74] and separately alleged against Hume.[75]

Regarding the required elements of an equal protection claim, Amoako, at no point in the complaint, alleges membership in a protected class.  In an email to Stouffer attached to the complaint as part of Exhibit A, however, he stated,

> I am unsure what your intentions were when you acknowledged to [Hume] that you did not know who I was.  This is a concern for me as a black man because [Hume] was reacting to your feedback …. I also believe that this situation was scary for me as a black man due to police brutality and the way the officer responded to me.[76]

---

[71] Clayton Defs.' Mot. to Dismiss ¶ 1.
[72] Del. Const. art. I, § 21.
[73] *Giles*, 2022 WL 17826005, at *6.
[74] Compl. ¶ 3.13.
[75] *Id.* ¶ 3.5.
[76] Ex. A at 3.

Therefore, Amoako has established the first prong by alleging his membership in a protected class.

Any allegations that arguably touch on the other two prongs are vague and conclusory at best: in the same email chain, Amoako alleged that Hume "did not stop any other individuals that were walking by, so this encounter was a discriminatory intent and it was unlawful,"[77] and "this was discriminatory intent as I was the only parent on the premises that [Hume] requested an ID or have me arrested [sic]."[78] At no point does Amoako allege that those allegedly treated differently than he were outside his protected class, or that the alleged differential treatment was due to his protected status. As noted previously, in considering a Rule 12(b)(6) motion the Court does not accept "conclusory allegations unsupported by specific facts."[79] Specifically, to draw the inference, without supporting facts, that every parent whom Hume did not stop was not a member of Amoako's protected class, or that Hume's actions were motivated by that membership, is not warranted. As noted above, there is no different set of rules for *pro se* litigants.[80]

### b. Amoako has no standing to pursue equal protection claims on behalf of his daughter, or on behalf of his son with regard to the English learner placement.

In his complaint, Amoako characterizes the false allegation against his daughter as indicative of "a pattern of discriminatory treatment and harassment directed towards her."[81] Because his daughter is not a party to this action, he has no

---

[77] *Id.*

[78] *Id.* at 4. Amoako also described the encounter as "coercive and improper." *Id.* at 3.

[79] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1160 (Del. 2010) (citation omitted).

[80] *Tigani*, 2022 WL 1039969, at *2. Given the Court's reasoning as outlined above, there is no need to address the Clayton Defendants' separate argument that there is no private right of action under Article I, Section 21.

[81] Compl. ¶ 3.11.

16

standing to pursue a discrimination claim on her behalf.[82] For similar reasons, Amoako cannot pursue an equal protection claim related to his son's placement "in an English learner class."[83]

As noted previously, Amoako has filed a "Motion to Include Son as Plaintiff."[84] That motion, however, addresses L.A.'s October 2021 placement on a bus. Therefore, Amoako's equal protection claim regarding his son's class placement must be dismissed.

### c. The equal protection claim regarding the negligent placement on a bus must be dismissed.

According to Amoako, "the abandonment of [his] son by a bus driver" was discriminatory.[85] Although Amoako lacks standing to pursue this claim on behalf of his son, he has filed a motion to include his son as a plaintiff regarding the bus incident. As with the negligence claims based on this incident, however, any equal protection claims are barred by Delaware's two-year statute of limitations.[86]

Amoako seeks to add his son as a plaintiff only with respect to the erroneous placement of his son on a bus. The complaint, however, was filed well over two years after that incident. Thus, any claims arising from it, whether for negligence or for an alleged equal protection violation, would be time-barred.

---

[82] *See, e.g.*, *Murphy v. United Servs. Auto Ass'n*, 2005 WL 1249374, at *2 (Del. Super. May 10, 2005) (explaining plaintiff must establish injury to himself by defendants).

[83] Compl. ¶ 3.12.

[84] D.I. 15.

[85] Compl. ¶ 3.14.

[86] *See Giles*, 2022 WL 17826005, at *5 (noting civil rights claims in Delaware courts are subject to the two-year statute of limitations in 10 *Del. C.* § 8119).

### d. The Court need not reach Amoako's equal protection claim for failure to train and supervise.

A plaintiff must sufficiently plead an underlying equal protection violation for the Court to consider the failure to train and/or supervise claim.[87] Stated differently, where, as here, the underlying equal protection claim fails, there cannot be a successful claim for failure to train and supervise under equal protection. For the reasons discussed above, Amoako has failed to state a claim for an underlying equal protection violation for the Hume incident, the theft accusation against his daughter, his son's class placement, and the bus incident involving his son.

Instructive in this regard is the decision in *N.M. v. Wyoming Valley West School District* ("*Wyoming Valley*"),[88] a Middle District of Pennsylvania case from 2016. There, the plaintiff was a fourteen-year-old student who had autism.[89] One day, while attending school, he needed to be taken to the emergency room at the hospital.[90] While at the hospital, over the span of seventy days, the plaintiff received no special education services from the school district.[91] Among other claims, plaintiff brought a count for violation of his equal protection rights for failure to train and supervise.[92]

As relevant here, the court dismissed an equal protection claim based on failure to train and supervise because in his complaint, the plaintiff did not

---

[87] *N.M. v. Wyo. Valley W. Sch. Dist.*, 2016 WL 2757395, at *14 (M.D. Pa. May 11, 2016) ("[T]he absence of an underlying constitutional violation precludes any supervisory liability on a 'knowledge or acquiescence' or 'failure to train theory.'" (quoting *Crawford v. Lappin*, 446 F.App'x 413, 416 (3d Cir. 2011))).

[88] 2016 WL 2757395 (M.D. Pa. May 11, 2016).

[89] *Id.* at *1.

[90] *Id.*

[91] *Id.*

[92] *Id.* at *6.

allege any facts from which the court can reasonably infer that the defendant failed to train, supervise, and/or adopt adequate policies, and that such failures caused plaintiff to be treated differently from similarly situated students and resulted in harm to plaintiff. There are simply no facts in the complaint concerning the defendant's training, supervision, and/or adoption of the policies, practices, and customs alleged to violate plaintiff's constitutional rights. Nor are there any facts concerning individual employees of the defendant responsible for training, supervising, and/or adopting policies of the defendant.[93]

Here, for similar reasons, the Court reaches the same outcome as the *Wyoming Valley* Court. The Court cannot reasonably infer that the PCA Defendants failed to train, supervise, and/or adopt adequate policies, and that such failures caused Amoako to be treated differently from similarly situated parents, which resulted in harm to him, either because the allegations in the complaint are conclusory in nature, or because the claims are barred on the basis of standing or the applicable statute of limitations. Accordingly, all of the equal protection claims are dismissed.

### 4. Amoako's Claims Under The EAA Must Be Dismissed.

Amoako argues that both the false accusation of his daughter's stealing, and the erroneous placement of son in an English learner class, violated the Equal Accommodations Act (the "EAA"), which Amoako calls the "Delaware Human Relation Act."[94] For the reasons previously stated, Amoako cannot pursue such claims on behalf of his children. Furthermore, as the Delaware Supreme Court made clear in *Miller v. Spicer*,[95] there is no private right of action under the EAA because the legislature never intended one, and the exclusive remedies for an EAA claim are

---

[93] *Id.* at *14 (cleaned up).
[94] Compl. ¶¶ 3.8–.12. The EAA is codified at 6 *Del. C.* §§ 4500–4513.
[95] 602 A.2d 65 (Del. 1991).

administrative, which are provided thereunder.[96]  Therefore, these claims are also subject to dismissal.

### 5. The Negligent Failure To Train And Supervise Claim Fails.

In reading Amoako's complaint, the Court infers that he brings a negligence claim against the PCA Defendants for failure to train and supervise Hume and PCA employees.[97]  In response, the PCA Defendants' argument is two-fold:  first, that they are immune from civil liability under the Delaware State Tort Claims Act (the "DSTCA")[98] because the actions (or non-actions) related to training and experience were (1) discretionary, (2) not conducted in bad faith, and (3) not alleged to have been conducted with gross or wanton negligence;[99]  and second, because Amoako's complaint puts forth conclusory allegations that fail to state a claim upon which relief can be granted.[100]  The Court agrees with the PCA Defendants.

In Delaware, the "General Assembly enacted the DSTCA to codify the 'common law principles of sovereign immunity.'"[101]  The DSTCA provides sovereign immunity for State actors in a civil suit in a situation in which the following elements are met:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer,

---

[96] *Id.* at 66–68.
[97] Compl. ¶¶ 3.7, 3.13.
[98] 10 *Del. C.* §§ 4001–4006.
[99] PCA Defs.' Mot. to Dismiss ¶ 10.
[100] *Id.* ¶ 8 n.1.
[101] *Smith v. Christina Sch. Dist.*, 2011 WL 5924393, at *2 (Del. Super. Nov. 28, 2011) (quoting *Doe v. Cates*, 499 A.2d 1175, 1180 (Del. 1985)).

> employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;
>
> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
>
> (3) The act or omission complained of was done without gross or wanton negligence.[102]

In short, for Amoako to overcome this immunity, he must plead that the PCA Defendants were engaged in: "(1) ministerial actions; (2) actions taken in bad faith and not in the public interest; or (3) actions of gross or wanton negligence."[103] For the reasons explained below, he has failed to do so.

### a. Amoako fails to plead that the PCA Defendants were engaged in ministerial actions.

The first way in which Amoako can overcome DSTCA immunity is to show that the act or omission complained of was ministerial as opposed to discretionary. "The General Assembly sought to protect public officials or employees from lawsuits that might hamper their ability to exercise discretion while performing official duties."[104] Whether an act is ministerial or discretionary is a question of law.[105] An act is ministerial when "a person performs in a prescribed manner without regard to his own judgment concerning the act to be done."[106] An act is discretionary when it requires some determination or implementation that allows a choice of method, without a hard and fast rule for a course of conduct.[107]

---

[102] 10 *Del. C.* § 4001(1)–(3).
[103] *Jackson v. Minner*, 2013 WL 871784, at *6 (Del. Super. Mar. 1, 2013) (citing *Lovett v. Pietlock*, 2011 WL 2086642, at *3 (Del. Super. Apr. 26, 2011)).
[104] *Smith*, 2011 WL 5924393, at *2.
[105] *Ward v. Gateway Charter Sch., Inc.*, 2018 WL 3655864, at *3 (Del. Super. July 18, 2018) (citing *Gutierrez v. Advanced Student Transp., Inc.*, 2015 WL 4460342, at *4 (Del. Super. July 14, 2015)).
[106] *Id.* (quoting *Gutierrez*, 2015 WL 4460342, at *4).
[107] *Id. See also Simms v. Christina Sch. Dist.*, 2004 WL 344015, at *8 (Del. Super. Jan. 30, 2004) ("[W]here there does not seem to be any hard and fast rule concerning the manner in which [the

21

For example, the decision to hire an employee has been held to be a discretionary act.[108] The supervision of students has been held to be a ministerial act, but the manner and particular methods of supervision have been held to be discretionary functions.[109] Amoako must plead facts in his complaint that show the absence of discretionary conduct.[110]

> ### i. Amoako's claim that the PCA Defendants failed to train and supervise Hume is conclusory.[111]

One specific act or omission that Amoako must plead to be ministerial is the training and supervision of Hume, specifically, regarding the incident that occurred when Amoako went to pick up his children on March 12, 2024. To demonstrate that certain acts or failures to act are ministerial, as opposed to discretionary, Amoako must show the existence of maintained mandatory policies or procedures that the PCA Defendants ignored or otherwise failed to follow.[112]

Tellingly, Amoako does not. Allegations that the PCA Defendants "failed to provide adequate training and supervision to its employees, resulting in a pattern of misconduct and negligence"[113] and that the PCA Defendants "failed to adequately train and supervise its employees" are conclusory and not well-pled.[114] The Court need not accept conclusory allegations unsupported by facts.

---

supervisor] was to supervise [the employee] as a residential advisor, I am persuaded that the supervision of [the employee] was also discretionary.").

[108] *Gutierrez*, 2015 WL 4460342, at *4 & n.42.

[109] *Id.* at *4 & nn.43–44; *Ward*, 2018 WL 3655864, at *3 & n.36.

[110] *Gutierrez*, 2015 WL 4460342, at *6; *Ward*, 2018 WL 3655864, at *4.

[111] To the extent that Amoako alleges, by inference, the negligent hiring of Hume, such a claim is not sustainable because hiring is a discretionary act. *Gutierrez*, 2015 WL 4460342, at *4.

[112] *Tews v. Cape Henlopen Sch. Dist.*, 2013 WL 1087580, at *4 (Del. Super. Feb. 14, 2013).

[113] Compl. ¶ 3.7.

[114] *Id.* ¶ 3.13.

In *Jackson v. Minner*,[115] this Court explained that, because there was no statute that prescribed a particular way in which prison guards "must care for, control, or supervise inmates," the control over the movement of the plaintiff inmate involved discretion, which ultimately barred plaintiff's claim under the DSTCA.[116] Likewise, Amoako has not alleged that PCA acted pursuant to a prescribed rule or procedure in supervising Hume, or any PCA employee or purported employee for that matter. Further, Amoako alleges that Hume is an officer of the Clayton Police Department.[117] While Amoako also alleges in a conclusory fashion that Hume is an employee of PCA,[118] he alleges no facts supporting the conclusion that Hume is an employee of PCA or that the PCA Defendants had an obligation to train and supervise him.[119] Furthermore, there are simply no non-conclusory allegations that Hume failed to receive training from the PCA Defendants, that he did receive training that was deficient, or that PCA knew Hume was not properly trained before deploying him as a resource officer.

Moreover, Amoako argues that he had a "previous arrangement made between" him and PCA regarding aftercare.[120] Amoako's own exhibits, however, show that Amoako was sent an email outlining the new school-wide pick-up procedure and that he mistakenly believed that it did not apply to him.[121] Amoako did not plead how PCA Defendants knew or should have known of prior existing

---

[115] 2013 WL 871784 (Del. Super. Mar. 1, 2013).
[116] *Id.* at *7.
[117] Compl. ¶ 1.4.
[118] See Compl. ¶ 3.13 ("the School District failed to adequately train and supervise its employees, including but not limited to Officer Hume").
[119] *Cf. Terranova v. Borough of Hasbrouck Heights*, 2020 WL 526113, at *9 (D.N.J. Jan. 30, 2020) (dismissing failure to train and supervise claim because the officer was an employee of neither school nor school district and the school district was not responsible for officer's training))).
[120] Ex. A at 1.
[121] *See generally id.* at 1–5.

pick-up arrangements.[122]  If anything, the new pick-up procedure shows that Hume and the PCA Defendants followed that policy and procedure rather than ignoring them or not following them.  Finally, even if Hume's actions were negligent, in order to bypass DSTCA immunity his actions must have been grossly or wantonly negligence.  As explained below, Amoako has failed to plead this.

> ii.  *Any other allegations of failure to train and supervise are conclusory.*

Other than Hume, who is named in connection with the failure to train or supervise allegations in paragraph 3.13 of the complaint, Amoako has neglected to identify any other employee or purported employee of PCA whom the PCA Defendants allegedly failed to train or supervise.  Moreover, the sum total of the failure to train or supervise allegations in the complaint are as follows:  that PCA "failed to provide adequate training and supervision to its employees,"[123] and that PCA "failed to adequately train and supervise its employees."[124]  Such allegations are conclusory and unsupported by any facts.  Therefore, the Court need not consider whether Amoako has sufficiently pled that these actions were ministerial.

### b. *Amoako fails to plead that the PCA Defendants acted in bad faith.*

The second way in which Amoako can bypass immunity under the DSTCA is for him to show bad faith by the PCA Defendants involving their negligent training and supervision of Hume and PCA employees.  Good faith is "honesty of purpose

---

[122] *See Ward*, 2018 WL 3655864, at *4.
[123] Compl. ¶ 3.7.
[124] *Id.* ¶ 3.13.

and integrity of conduct."[125]   In contrast, bad faith has many definitions, but the common denominator among all of them is that "there is some kind of dishonest motive or purpose."[126]

Here, Amoako has not pled any facts demonstrating that the PCA Defendants, in their failure to train or supervise Hume or any other alleged employee, engaged in conduct with the conscious purpose of injuring him or acted with dishonest motivation or purpose towards him.   In fact, as previously shown, the conclusory allegations regarding this claim neglect to delineate any conduct at all.

### c.  Amoako fails to plead gross or wanton negligence.

The final way in which Amoako can overcome DSTCA immunity is to plead facts, with particularity, demonstrating that the PCA Defendants acted with gross or wanton negligence regarding the negligent training and supervision of Hume and of any other individuals.[127]   In the failure to supervise context, "gross negligence generally involves foreknowledge of a problem with no attempt to address the problem."[128]   Furthermore, gross negligence requires "a showing of a high level of negligence that constitutes an extreme departure from the ordinary standard of care."[129]   Wanton negligence is "conduct that is so unreasonable and dangerous that a person knows or should know that an imminent likelihood of harm can result."[130] Pursuant to Superior Court Civil Rule 9(b) ("Rule 9(b)"), gross or wanton negligence

---

[125] *Gutierrez*, 2015 WL 4460342, at *6 (quoting *Martin ex rel. of Estate of Martin v. State*, 2001 WL 112100, at *7 (Del. Super. Jan. 17, 2001)).

[126] *Brittingham v. Bd. of Adjustment of City of Rehoboth Beach*, 2005 WL 1653979, at *2 (Del. Super. Apr. 26, 2005).

[127] *Ward*, 2018 WL 3655864, at *4.

[128] *Id.* (quoting *Sadler-Ievoli v. Sutton Bus & Truck Co.*, 2013 WL 3010719, at *5 (Del. Super. June 4, 2013)).

[129] *Id.* (quoting *Sadler-Ievoli*, 2013 WL 3010719, at *4).

[130] *Id.* (quoting *Sadler-Ievoli*, 2013 WL 3010719, at *4).

must be pled with particularity such that allegations "may not be conclusory and *must be accompanied by some factual allegations to support them*."[131]

Pursuant to Rule 9(b), Amoako's complaint lacks particularity. As previously noted, the complaint provides only conclusory allegations; there is nothing to show an extreme departure from the ordinary standard of care. Without more, the Court is reluctant to see these as anything other than bare allegations that do not rise to the level of reasonable conceivability. Amoako has not alleged any facts that show that PCA owed him a duty to train and supervise Hume or any PCA employee, or that PCA's training and supervision were in any way deficient.

For all the reasons explained, PCA Defendants' motion to dismiss Amoako's claim for negligent failure to train and supervise is granted.[132]

### 6. The Educational Malpractice Claim Fails.

Amoako brings an educational malpractice claim under the EAA[133] for failure to properly place and assess regarding the son's placement in an English learner class. These claims must be dismissed because (1) Amoako has no standing to pursue such a claim on behalf of his son; (2) there is no private right of action under the EAA; and (3) for the reasons previously stated, the PCA Defendants are immune

---

[131] *Id.* (quoting *Tews*, 2013 WL 1087580, at *2 (emphasis in original)). *See also Greenfield for Ford v. Budget of Del., Inc.*, 2017 WL 729769, at *2 (Del. Super. Feb. 22, 2017) ("Rule 9(b) is satisfied when the pleading advises the defendant (1) what duty, if any, was breached; (2) who breached it; (3) what act or failure to act breached the duty; and (4) the party upon whom the act was performed." (internal quotations and citations omitted)); *id.* at n.28 (collecting cases).

[132] *Ward*, 2018 WL 3655864, at *5 ("Because the Court finds that Plaintiff has failed to plead that Defendant's alleged actions or failures to act were ministerial, that Defendant acted in bad faith, or that Defendant acted with gross or wanton negligence, Plaintiff has not met its burden to overcome Defendant's entitlement to immunity as established in the DSTCA. Therefore, Plaintiff has failed to state a claim upon which relief can be granted.").

[133] 6 *Del. C.* §§ 4500–4513.

under the DSTCA.  Moreover, even if the educational malpractice claim was not barred for these reasons, Delaware does not recognize such claims.[134]

## C. THE MOTION TO ADD AMOAKO'S SON AS A PLAINTIFF MUST BE DENIED AS FUTILE.

Amoako has filed a motion to add his son, L.A., as a plaintiff.  Amoako could have filed an amended complaint as a matter of course, as no responsive pleadings have been filed, but instead, has sought leave of the Court to do so.[135]  Leave to amend a complaint should be freely given where justice so requires.[136]  Leave to amend should be denied, however, if the proposed amendment would be futile.[137] An amendment is futile if the complaint would still be subject to dismissal for failure to state a claim, that is, the amended complaint cannot survive a motion to dismiss.[138] Discretion rests with the Court.[139]

Amoako's motion mentions only the alleged negligent misplacement of L.A. on a bus in October 2021.  Accordingly, the addition of L.A. as a plaintiff would be futile since such claims are barred by the applicable statute of limitations.

---

[134] *See, e.g.*, *Moss Rehab. Hosp. v. White*, 692 A.2d 902, 906 & n.7 (Del. 1997) (noting that at least ten states and the District of Columbia do not recognize educational malpractice claims).

[135] *See* Super. Ct. Civ. R. 15(a) (party may amend its pleading once as a matter of course before a responsive pleading is filed). *See also Reylek v. Albence*, 2023 WL 142522, at *6 & n.51 (Del. Super. Jan. 10, 2023) (collecting prior Superior Court decisions showing that a motion to dismiss is not a responsive pleading within the meaning of Superior Court Civil Rule 15(a)).  Even were Amoako to amend his pleading as a matter of course to add his son as a plaintiff, those claims would be subject to dismissal for the reasons explained below.

[136] Super. Ct. Civ. R. 15(a); *Clark v. State Farm Mut. Auto. Ins.*, 131 A.3d 806, 811 (Del. 2016).

[137] *E.I. du Pont de Nemours & Co. v. Allstate Ins.*, 2008 WL 555919, at *1 (Del. Super. Feb. 29, 2008) ("a motion to amend must be denied if the amendment would be futile"); *Clark*, 131 A.3d at 811–12.

[138] *E.I. du Pont de Nemours*, 2008 WL 555919, at *1; *Clark*, 131 A.3d at 811–12.

[139] *E.I. du Pont de Nemours*, 2008 WL 555919, at *1.

## VI.    CONCLUSION

For the reasons explained, Amoako's Motion for Default Judgment is **DENIED**; the Clayton Defendants' Motion to Dismiss is **GRANTED**; the PCA Defendants' Motion to Dismiss is **GRANTED**; and Amoako's Motion to Include Son as Plaintiff is **DENIED** as futile.  Amoako's Complaint is **DISMISSED**.

    **IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
oc:    Prothonotary
cc:    Maxwell A. Amoako – *Via U.S. Mail*
       Counsel of Record - *Via File & ServeXpress*